72146. DUDLEY v. THE STATE.
(345 SE2d 888)

McMURRAY, Presiding Judge.

Defendant was convicted of the offenses of armed robbery and aggravated assault. This appeal followed the denial of defendant's motion for new trial.

The evidence showed that on the night of January 20, 1984, the victim, an elderly woman, was being driven home by her brother. The pair turned into the alley which adjoins the victim's home and parked the car. As the victim and her brother alighted from the car, they were accosted by two males. One of the assailants was tall and thin; the other was short. The tall assailant pointed a pistol at the victim, pushed her down, shot her in the head and took her handbag. In the meantime, the victim's brother successfully warded off the attack of the short assailant. The entire incident lasted four or five seconds.

The victim told the police her assailant was six feet tall and thin, weighing between 135 and 145 pounds. She said that he had a long jaw, very large teeth and high cheekbones; that "he was a very peculiar color . . . sort of pale yellow"; and that he was clean-shaven. She added the assailant was wearing a green "skull cap," a green turtleneck sweater and pale green trousers. The "skull cap" was pulled down over the assailant's forehead. The victim was unable to describe the other attacker, saying only that he was "shorter and very black." The victim's brother was not able to describe either one of the attackers.

On January 31, 1984, detectives brought a photo spread to the victim's home. The spread consisted of six pictures, one of which was a picture of defendant's face. The victim picked out defendant's picture "right away." She was "90% positive" that defendant was the assailant. Later in the day, the detectives returned with another six picture photo spread. A different picture of defendant was used in the second spread. It depicted defendant's upper body. After viewing the second group of pictures, the victim was absolutely sure that it was the defendant who attacked her.

At trial, the victim positively identified defendant as her assailant. She stated she was able to get an exceptional look at him because he was very close and the light was very good. (The alley was illuminated by an arc light.) She further stated that she would never forget his face. *Held*:

1. In his first enumeration of error, defendant contends the victim's in-court identification should have been suppressed because it was tainted by impermissibly suggestive photo spreads. In this regard, defendant points out that only his picture appeared in each set of photos (no other person's photo appeared in each set). He also asserts that he was the only light skinned subject in the photo spreads. Defendant's contention is not well founded.

The fact that defendant's picture was the only one to appear in both photo spreads does not demonstrate that the spreads were impermissibly defective. *Clark v. State*, 166 Ga. App. 366, 368 (3) (304 SE2d 494). This is especially so since the two photographs of defendant were different. *Cleveland v. State*, 164 Ga. App. 478, 480 (1) (298 SE2d 22).

Defendant's assertion that he was the only light skinned subject in the photo spreads does not withstand scrutiny. Our examination of each spread leads us to conclude that they do not suffer from the defect attributable to them. See *Thomas v. State*, 176 Ga. App. 53, 57 (7) (335 SE2d 135).

Even if the photo spreads were suggestive, as defendant contends, we do not think they adversely affected the reliability of the victim's identification. "In deciding whether a pre-trial identification

procedure was so suggestive as to require exclusion of an in-court identification, it must be determined whether the procedure resulted in a very substantial likelihood of irreparable misidentification, and whether under all the circumstances the identification was reliable notwithstanding any suggestive procedure. *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968); *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Thornton v. State*, 238 Ga. 160 (231 SE2d 729) (1977). The factors considered in determining the extent of any likelihood of misidentification 'include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation . . .' *Neil v. Biggers*, supra at 199; *Barner v. State*, 139 Ga. App. 50 (227 SE2d 874) (1976)." *Cleveland v. State*, 164 Ga. App. 478, 480 (1), supra.

Applying these factors to the case sub judice, we do not find the photo spreads to have been so impermissibly suggestive as to result in a substantial likelihood of misidentification. The defendant was only an arm's length away from the victim when he assaulted her; the light was good; the victim's attention was focused on the defendant; and the victim accurately described defendant immediately after the attack. Moreover, the victim never expressed any grave uncertainty about her identification. True, the victim was somewhat reluctant to positively identify defendant in the first photo spread. She testified at trial, however, that her reluctance stemmed only from the fact that she could not ascertain defendant's size from the first photo and she wanted to be sure of her identification.

The fact that the victim's brother could not identify either attacker does not detract from the reliability of the victim's identification. The victim and her brother stood in different parts of the alley. The evidence showed that the lighting in the alley was not uniform but that the defendant was very close to the victim and the light was very good at this particular place.

Under all of the circumstances, we find the victim's identification reliable. See *Perry v. State*, 173 Ga. App. 541 (1) (327 SE2d 527). The first enumeration of error is without merit.

2. In his second enumeration of error, defendant contends the victim's identification testimony was tainted because the victim saw defendant dressed in prison garb at the preliminary hearing. This enumeration of error fails for the reasons set forth in Division 1. Under all of the circumstances, the victim's identification testimony was reliable. See generally *Smith v. State*, 169 Ga. App. 686, 688 (314 SE2d 703). We add that the observation of defendant at the preliminary hearing was not a confrontation. The victim had already identified defendant positively from his photographs. Compare *Towns v.*

*State*, 136 Ga. App. 467 (221 SE2d 631).

3. Defendant contends the trial court erred in failing to grant his motion for new trial on the ground that one of the victim's brothers (who was not a witness) communicated extrajudicially with a juror. The record shows that during the trial one of the jurors gave the trial judge a note in which she informed him that she worked with the victim's brother about eight years before trial; that she spoke with the victim's brother before the trial began and exchanged pleasantries; that she inquired what he was doing at the courthouse and he replied "that boy shot my sister"; that no one else was aware of the exchange; that the exchange would not influence her decision; and that she would base her decision in the case on the evidence. Upon being questioned in open court, the juror stated that she would not be influenced by the communication from the victim's brother. The juror was admonished not to tell the other jurors what transpired.

Where an unauthorized contact or communication is made to a juror, a valid conviction is not otherwise vitiated unless the defendant was actually prejudiced by the communication. *Clark v. State*, 153 Ga. App. 829, 830 (266 SE2d 577); *Smith v. State*, 173 Ga. App. 889 (328 SE2d 553), cert. vacated, 254 Ga. 536 (333 SE2d 371). See *Wellmaker v. State*, 124 Ga. App. 37 (183 SE2d 62). In the case sub judice, the prosecution carried its burden of showing that defendant was not harmed by the communication. *Clark v. State*, 153 Ga. App. 829, supra. Compare *Lamons v. State*, 255 Ga. 511 (340 SE2d 183) (1986), in which the chief prosecuting witness (an undercover police officer and party to the controlled substance sale who assisted and sat with the prosecuting attorney during trial) was contacted by a juror to turn in her ex-boyfriend for transacting business in illegal drugs resulting in a unique relationship between the officer/witness and the juror. During the hearing before the trial judge the officer/witness stated he had developed a confidential relationship with the juror and could not reveal the facts of the conversation between him and the juror. In that case the Supreme Court held a new trial was necessary as the State did not meet its burden of showing no harm to the defendant. Moreover, the State stood by the position that the conversation between the State's witness and the juror was confidential.

*Golden v. State*, 63 Ga. App. 765, 767 (12 SE2d 108), upon which defendant relies is not apposite. In *Golden*, the prosecution failed to demonstrate that defendant was not prejudiced by the juror's misconduct. Defendant's third enumeration of error is without merit.

4. In the fourth enumeration of error, defendant contends the trial court erred in allowing evidence of an extrinsic crime. The State presented evidence that on October 27, 1983, a 72-year-old nun was attacked as she was leaving a parking lot. (The parking lot was located about six blocks from the victim's house and within 100 feet of

defendant's house.) The nun was pushed against the door of her car. Almost simultaneously, the attacker took her pocketbook. The defendant and another individual were seen running with the pocketbook. When a police officer arrived he was told where defendant lived. As the officer went to the door of defendant's house, he found a pen which belonged to the nun. He knocked on the door and defendant's brother answered. The officer was given permission to search the house. He found defendant hiding in a closet. Money was discovered underneath a bed.

Evidence of other criminal acts is admissible to show motive, intent, plan, identity, bent of mind or course of conduct. The State must show, however, that the accused was the perpetrator of the other criminal act and that there is a sufficient similarity between the other criminal act and the crime charged. *Gladson v. State*, 253 Ga. 489, 491 (2) (322 SE2d 45); *Thomas v. State*, 176 Ga. App. 53 (1), supra.

Here the evidence clearly demonstrated that defendant was the perpetrator of the other criminal act. Was the other criminal act similar to the crime charged? We think it was. The other criminal act occurred about six blocks from the victim's house and less than three months before the crime charged. Both victims were elderly ladies; both victims were pushed as they were getting in or out of an automobile; both victims had their purses snatched. Moreover, in each case the assailant hurriedly left the scene on foot and he was accompanied by another individual.

The trial court did not err in permitting the State to introduce evidence of the other crime. *Sport v. State*, 253 Ga. 689 (324 SE2d 184). The fourth enumeration of error is not meritorious.

5. Since the State did not stipulate the admissibility of the results of a polygraph examination, the trial court did not err in excluding such evidence. *McGhee v. State*, 253 Ga. 278, 281 (6) (319 SE2d 836); *Rucker v. State*, 177 Ga. App. 779 (341 SE2d 228); *Bundren v. State*, 155 Ga. App. 265, 266 (4) (270 SE2d 807). The fifth enumeration of error is without merit.

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED MAY 14, 1986 —
REHEARING DENIED MAY 30, 1986 —

*Mark J. Nathan*, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Virginia A. Erskine, Assistant District Attorneys*, for appellee.