## A91A0161. LODEN v. THE STATE.
(406 SE2d 103)

McMURRAY, Presiding Judge.

Defendant was charged in Count 1 of a nine count indictment with forgery in the first degree. In Counts 5 and 6, defendant was charged with forgery in the second degree in that he did knowingly make and possess, with intent to defraud, identification credentials bearing the fictitious name, "Joseph Steven Latvis." In Count 9, defendant was charged with forgery in the second degree in that he did knowingly make and possess, with intent to defraud, an identification card bearing the fictitious name, "Joseph Latvis." In Counts 2 and 4,

defendant was charged with forgery in the second degree in that he did knowingly make and possess, with intent to defraud, identification credentials bearing the name, "Terry D. Johnson." In Count 7, defendant was charged with forgery in the second degree in that he did knowingly make and possess, with intent to defraud, an identification card bearing the fictitious name, "Terrance Dawane Johnson." Defendant was charged in Count 3 with forgery in the second degree in that he did knowingly make and possess, with intent to defraud, an identification card bearing the fictitious name, "Richard Allen West." In Count 8, defendant was charged with forgery in the second degree in that he did knowingly make and possess, with intent to defraud, a Georgia temporary driver's license bearing the fictitious name, "Steven Allen Miller." The case was tried before a jury and the evidence revealed the following:

On October 10, 1988, defendant entered a K Mart store in Kennesaw, Georgia, seeking a cash refund for K Mart electrical merchandise. Defendant presented the merchandise and a photocopy of a sales receipt. He then entered a Marietta, Georgia, address and the name, "T. Johnson," on a "REFUND IDENTIFICATION TICKET." Defendant provided no information in a space designated, "CUSTOMER PHONE NO." Assistant Store Manager George Burton examined the photocopied receipt and noticed that it reflected a transaction involving the same type equipment defendant was attempting to return. He also noticed that a number on the receipt appeared to be "altered" and that the receipt did not contain the often used logo, "thank you for shopping at K Mart. . . ." Mr. Burton questioned defendant as to the authenticity of the receipt and the information on the "REFUND IDENTIFICATION TICKET" and defendant affirmed that he resided in Marietta; stated that he had no telephone number and explained that the receipt "came from somewhere in North Carolina, and his brother needed the original receipt because of a purchase of a boat on the same receipt, and he didn't know whether he wanted to keep it or not." Mr. Burton returned the photocopied receipt and the merchandise to defendant and informed defendant that "without proper ID, not able to verify [defendant's] residence, [he] couldn't help him." Defendant then left the store and Mr. Burton alerted other K Mart stores of defendant's "fishy" activities, describing defendant's appearance and describing the photocopied receipt and the merchandise defendant presented for cash.

Dennis Goodrich, "a special agent with loss prevention [for] K Mart Corporation," received the alert on defendant's activities and, later that afternoon, he observed defendant enter the K Mart store in Acworth, Georgia, and he watched defendant approach the customer service desk and request a refund for merchandise which matched the equipment described in Mr. Burton's alert. Defendant presented a

photocopied sales receipt and he executed a "REFUND IDENTIFI-CATION TICKET," identifying himself as "T. Latvis" and entering a Stone Mountain, Georgia address and a telephone number. Defendant informed an assistant store manager that he had no identification and that his brother in North or South Carolina had "the original receipt because it had an expensive boat on it [and that] in case [his] brother wanted to return [the boat] he wanted to keep the original receipt." The assistant manager refused to exchange defendant's merchandise for cash and defendant "started getting somewhat disorderly[,] using minor-type profanity, threatening of suing, and threatening that he wanted to see the main store manager. . . ." Special Agent Goodrich interceded and identified himself as "a loss prevention manager [and] asked [defendant] to come to the back to the office [and] try to work out the situation. . . ." Defendant followed Special Agent Goodrich and an assistant store manager to the special agent's office, but defendant protested, " 'I'm going to sue you, y'all are holding me wrongly.' "

Special Agent Goodrich examined the photocopied receipt and "recognized that it was a computerized receipt that . . . most [K Mart] stores use. . . ." He noticed that the receipt reflected a transaction involving the same type equipment defendant attempted to return and that the receipt appeared to reflect accurate prices for the merchandise defendant presented for a refund. Special Agent Goodrich also "noticed several changes on the receipt, that . . . looked to be done deceptively," i.e., a number on the receipt appeared to be altered, the receipt was blank in an area which normally indicates whether the transaction was completed via cash, check or charge and the receipt did not contain the often used logo, "thank you for shopping at K Mart."

Special Agent Goodrich asked defendant for identification and defendant "hesitated for a few minutes . . .," but he eventually produced "a driver's license or registration, . . . something with the name Terry Johnson." Defendant then "got a little belligerent and somewhat hostile [and asked,] am I under arrest?" Special Agent Goodrich said, "no, sir[, but] this is a private business, there's an infraction here, and I'm going to let the law enforcement take care of it." Defendant responded, " 'if you're not arresting me I'm leaving.' " Defendant then "started to blurt toward the door where the assistant manager was [and defendant] reached back toward his back area. . . ." Special Agent Goodrich responsively "attempted to grab [defendant's] hand at the elbow area [and] something fell to the floor[. Defendant] went to turn around and grab it[, but Special Agent Goodrich] grabbed for it first" and discovered a checkbook with checks bearing the names, "Latvis and Latius. . . ."

Lieutenant J. D. Woodruff and Officer Houston of the Acworth

Police Department arrived at the scene and Special Agent Goodrich gave the officers "a checkbook in the name of . . . Joseph Latius" and a "paper driver's license . . ." in the name of "Terry D. Johnson." Lieutenant Woodruff "asked [defendant] what his name was [and defendant] identified himself as Terry Allen Johnson, Junior." Defendant was then taken to the Acworth Police Department.

Defendant's personal property was inventoried at the police station and conflicting identification credentials were found in defendant's wallet, including a Georgia driver's license bearing a photograph of defendant and the name, "Joseph Stephen Latvis." Defendant's wallet also contained a laminated "DESIGN SYSTEM, INC." identification card bearing a photograph of defendant and the name, "Joseph Latvis." Defendant was later transferred to the Cobb County Jail.

Officer Mike Reece of the Cobb County Sheriff's "Fraud and Forgery Unit" obtained search warrants for defendant's "1986 Chevrolet truck with a camper and [defendant's] Ford Fairmont [automobile]." (The Ford Fairmont was found in the parking lot of the Acworth K Mart and defendant's camper truck was discovered at a Cobb County campground.) A briefcase was found in the Ford Fairmont and "a brown satchel-type case [was found] in the truck." The satchel contained a mutilated (cut) Georgia driver's license with no photograph and reflecting the name, Terry D. Johnson; a North Carolina driver's license bearing a photograph of defendant and the name, "Joseph Stephen Latvis"; a Commonwealth of Virginia driver's license bearing a photograph of defendant and the name, "Terry D. Johnson" and "a South Carolina I.D. card [bearing] the name of Terrance Dawane Johnson." The briefcase found in the Ford Fairmont contained identification credentials and business papers, including "a certificate of baptism for a Richard Allen West, a receipt for application of and the social security number for Richard Allen West, . . . xerox copy of a North Carolina birth certificate in the name of Richard Allen West, a temporary Georgia driver's license in the name of Richard Allen West, and two South Carolina I.D. cards in the name of Richard Allen West." The briefcase also contained "a certificate of baptism under the name of Steven Allen Miller, a receipt for application of social security in [the name of] Steven Allen Miller, . . . a certified copy of a birth certificate [from] North Carolina [for] Steven Allen Miller, and a Georgia temporary driver's license in the name of Steven Allen Miller."

It was later discovered that the photocopied receipt defendant presented at the Kennesaw and Acworth K Mart stores as proof of purchase of the K Mart merchandise defendant attempted to return was a copy of a K Mart receipt, altered to conceal that the transaction had been completed via check. It was also discovered that the

check used to purchase the merchandise was drawn on the account of "Joseph S. Latvis" and that the check was returned unpaid. Defendant was found guilty on all counts of the indictment.

On April 7, 1989, judgment was entered on the jury's verdicts and defendant was sentenced. Defendant's trial counsel did not file a motion for new trial, but on May 5, 1989, he filed a timely notice of appeal. On June 19, 1989, upon the trial court's determination that defendant was indigent, an attorney, who was not defendant's trial counsel, was appointed to represent defendant on appeal. *Held*:

1. Defendant contends the trial court erred in failing to suppress evidence seized by K Mart Special Agent Dennis Goodrich.

" ' "(T)he protection afforded by the Fourth Amendment proscribes only governmental action and is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation of a government official." ' *Williams v. State*, 257 Ga. 788, 789 (364 SE2d 569) (1988), quoting *United States v. Jacobsen*, 466 U. S. 109 (104 SC 1652, 80 LE2d 85) (1984). ' "The test . . . is whether (the private individual), in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the (government) when (he) produced (the evidence)." *Coolidge v. New Hampshire*, 403 U. S. 443, 487 (91 SC 2022, 29 LE2d 564) ((1971)).' *Marks v. State*, 174 Ga. App. 711, 714 (331 SE2d 900) (1985)." *State v. Lovig*, 189 Ga. App. 436, 437 (376 SE2d 229).

Dennis Goodrich was not a law enforcement officer at the time he detained defendant, nor was he then acting as an instrument or agent of the government. He was a private citizen working as "a special agent with loss prevention [for] K Mart Corporation." Consequently, it is unnecessary to determine whether the property seized by Special Agent Goodrich was in violation of defendant's Fourth Amendment rights. See *State v. Lovig*, 189 Ga. App. 436, 437, supra. This enumeration is without merit.

2. Defendant contends the trial court erred in failing to suppress evidence seized during the inventory of his personal effects at the Cobb County Jail.

"Property which the arrestee elects to take with him to jail is subject to search under analysis similar to that allowing search incident to an arrest. *United States v. Edwards*, 415 U. S. 800 (94 SC 1234, 39 LE2d 771) (1974); *Abel v. United States*, 362 U. S. 217 (80 SC 683, 4 LE2d 668) (1960). See also *Williams v. State*, 258 Ga. 80 (365 SE2d 408) (1988)." *Batton v. State*, 260 Ga. 127, 129 (3), 130 (391 SE2d 914). In the case sub judice, the items found during the inventory of defendant's personal effects at the Cobb County Jail were the same as the items taken from defendant during the inventory search at the Acworth Police Department. Consequently, "no

warrant was required for the subsequent search and seizure of these items, and this enumeration is without merit." *Williams v. State*, 258 Ga. 80 (2), 81 (365 SE2d 408).

3. Defendant contends the trial court erred in failing to suppress evidence found in his motor vehicles, arguing that law enforcement officers exceeded the scope of the search warrants by opening the briefcase and the satchel found in the vehicles. This contention is without merit.

Search warrants issued for defendant's truck and automobile authorized searches for "identification, checks and other financial information, and items purchased in any name other than Terry Duane Johnson." These warrants authorized law enforcement officers "to open any receptacle reasonably that could hold the substance or thing being sought and to discover or seize any item, substance, object, thing or matter, the possession of which is unlawful or which is tangible evidence of the commission of a crime in the State of Georgia. OCGA § 17-5-1 (b) (Code Ann. § 27-301); *Dugan v. State*, 130 Ga. App. 527, 531 (2), 532 (203 SE2d 722). "To conclude they did not have the right to discover what was concealed in the [briefcase and the satchel-type case] would preclude the officers from examining any potential container of the contraband being sought where the contraband was not fully visible even though the container may be a logical and plausible receptacle for that which is being sought." *Whittington v. State*, 165 Ga. App. 763, 764 (302 SE2d 617).

4. Defendant contends the trial court erred in failing to dismiss the indictment, arguing that prosecutions for the crimes charged are barred under OCGA § 16-1-7 (b).

OCGA § 16-1-7 (b) requires a single prosecution for crimes arising from the same conduct and that are within the jurisdiction of a single court and that are known by the proper prosecuting officer at the time of prosecution. In the case sub judice, defendant filed evidence showing that "Joseph S. Latuis" plead guilty on March 20, 1989, in the State Court of Cobb County for the misdemeanor offense of uttering a bad check. However, there is no evidence showing that the "Joseph S. Latuis" prosecution for uttering a bad check arose from the same conduct as the crimes charged in the case sub judice. Consequently, the trial court did not err in failing to dismiss the indictment under OCGA § 16-1-7 (b).

5. In his fifth enumeration, defendant contends the trial court erred in allowing similar transaction evidence, showing that he tendered a bad check for merchandise at the Mableton, Georgia, K Mart store on September 26, 1988.

"Evidence of other criminal acts is admissible to show motive, intent, plan, identity, bent of mind or course of conduct. The State must show, however, that the accused was the perpetrator of the

other criminal act and that there is a sufficient similarity between the other criminal act and the crime charged. *Gladson v. State*, 253 Ga. 489, 491 (2) (322 SE2d 45); *Thomas v. State*, 176 Ga. App. 53 (1) [(335 SE2d 135)]." *Dudley v. State*, 179 Ga. App. 252, 255 (4), 256 (345 SE2d 888).

In the case sub judice, the State presented evidence showing that defendant possessed a Georgia driver's license at the time of his October 10, 1988, arrest and that the Georgia driver's license contained information used to verify the identity of the maker of a bad check tendered at the Mableton, Georgia, K Mart store on September 26, 1988. (The maker of the bad check was identified himself as "Joseph S. Latvis" and the driver's license carried by defendant at the time of his arrest was purportedly issued to "Joseph Stephen Latvis.") This evidence was sufficient to prove defendant's identity as the perpetrator of the prior criminal act and the evidence was admissible to prove defendant's intent to defraud others through use of forged documents. Consequently, we find no error in admitting evidence of the prior criminal act. *Dudley v. State*, 179 Ga. App. 252, 255 (4), supra.

6. Defendant also asserts the following argument in support of his fifth enumeration: "If the transaction used herein is similar to the crimes for which Defendant is charged, Defendant argues that the Defendant's plea of guilty to the prior misdemeanor charge has to be similar and double jeopardy must attach. Defendant further argues that if such does not operate as procedural double jeopardy then the allegations testified to herein cannot be 'similar transactions.' "

Defendant's "procedural double jeopardy" argument inappropriately expands the scope of his fifth enumeration. *Bowen v. State*, 191 Ga. App. 760 (382 SE2d 694). Nonetheless, we find defendant's reasoning unpersuasive. Procedural double jeopardy prevents successive prosecutions for the *same* offense, it does not prevent prosecutions for offenses which are separate and similar to a prior prosecuted offense. See OCGA § 16-1-8 and Daniel, Ga. Crim. Trial Prac. (1990 ed.), p. 380, § 14-26.

7. Defendant contends the trial court erred in failing to dismiss the indictment under his Challenge to the Array of the Grand Jury. This enumeration is not supported by the record.

"No question is presented to this court unless the enumeration of errors and record clearly show that the question was presented to and passed on by the trial court. *Garland v. State*, 101 Ga. App. 395, 398 (114 SE2d 176) (1960)." *Betts v. State*, 191 Ga. App. 427, 428 (382 SE2d 172). In the case sub judice, defendant's brief does not show where the trial court passed on defendant's challenge to the array of grand jurors and our examination of the pretrial transcript does not reveal a ruling on a challenge to the array of grand jurors. On the contrary, the transcript reveals defendant's trial counsel's statement,

"We'll withdraw the Challenge to the Array of the Grand Jury, satisfied by subpoena." Under these circumstances, we find nothing for review.

8. Defendant contends the trial court erred in failing to grant a mistrial after objection to the following closing argument by the State's attorney: "I'd like to point out . . . that you have not heard one scintilla of evidence, or not one scintilla of evidence has been admitted, not one document or exhibit has been admitted into evidence to rebut the State's contentions. Nothing the State has presented to you as evidence has been rebutted by the defense."

An examination of the trial transcript reveals no motion for mistrial in response to the relevant portion of the State's closing argument. Consequently, this enumeration presents nothing for review. *Betts v. State*, 191 Ga. App. 427, 428, supra.

9. Defendant challenges the sufficiency of the evidence as to Counts two through nine of the indictment, arguing that there is no evidence that "he committed any crime nor acted with fraudulent intent using any of the items contained in [the] Bill of Indictment. . . ."

"A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. In the case sub judice, the State presented evidence that defendant was in possession of the identification credentials described in Counts 2 through 9 of the indictment; that the identification credentials were not in defendant's name and that the identification credentials described in Counts 2, 3, 5, 6, 7 and 9 included photographs of defendant. The State also proved that defendant used the identification card described in Count 5 of the indictment (a Georgia driver's license in the name of "Joseph Steven Latvis") to negotiate a $204.55 check; that the check was purportedly drawn on the account of "Joseph S. Latvis" and that the check was returned not paid. This evidence and evidence showing that defendant identified himself as "T. Johnson," "T. Latvis" and "Terry Allen Johnson, Junior" during an attempt to dupe K Mart out of the sales price of merchandise which had been purchased by defendant with a bad check is sufficient to authorize the jury's finding, beyond a reasonable doubt, that defendant committed forgery in the second degree as alleged in Counts 2, 3, 4, 5, 6, 7 and 9 of the indictment, i.e., that defendant possessed, with intent to defraud, identification credentials in the fictitious names enumerated in Counts 2, 3, 4, 5, 6, 7 and 9 of the indictment. OCGA § 16-9-2 (a). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 6] LE2d 560); *Browning v. State*, 174 Ga. App. 759, 760 (3) (331 SE2d 625). However, the State failed to prove that defendant committed

forgery in the second degree as alleged in Count 8 of the indictment.

Defendant was charged in Count 8 with forgery in the second degree in that he did possess a temporary Georgia driver's license with the "fictitious name, . . . Steven Allen Miller." The State presented evidence showing defendant possessed a temporary Georgia driver's license bearing the name of Steven Allen Miller, but failed to prove that the name, Steven Allen Miller, was "fictitious" or that the name, Steven Allen Miller, was used on the Georgia temporary driver's license in a fictitious manner. Defendant's photograph does not appear on the temporary driver's license and there is no evidence that defendant identified himself as Steven Allen Miller. Accordingly, defendant's conviction under Count 8 of the indictment is reversed.

10. Defendant, on his own behalf, filed a supplemental enumeration of errors and brief after his appellate counsel filed an enumeration of errors and a brief.

"Neither our State Constitution, see Ga. Const. 1983, Art. I, Sec. I, Par. XII, nor the Federal Constitution provides defendant with a right to simultaneous representation by counsel and self-representation. *Smith v. State*, 194 Ga. App. 327 (390 SE2d 304) (1990); *Cargill v. State*, 255 Ga. 616, 622 (3) (340 SE2d 891) (1986). Thus, we do not consider those errors raised or arguments made by defendant himself. He is obligated to bring them to the attention of his counsel in a timely manner for counsel's consideration and incorporation in the enumerations of error and brief if counsel deems them worthy and appropriate." *Coursey v. State*, 196 Ga. App. 135, 137 (5) (395 SE2d 574).

*Judgment affirmed in part and reversed in part. Sognier, C. J., and Andrews, J., concur.*

DECIDED MAY 10, 1991 — 

*Frank G. Smith, John R. Greco*, for appellant.
Charles Loden, *pro se*.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.