**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**May 5, 2020**

# In the Court of Appeals of Georgia

A20A0094. THOMAS v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Darren Thomas was convicted in Gwinnett County Superior Court of two counts of aggravated assault and a single count each of armed robbery, kidnapping, possession of a firearm during the commission of a felony, and entering an automobile with intent to commit theft. Thomas now appeals from the denial of his motion for a new trial, arguing that the trial court erred in denying his motion to suppress the victim's out-of-court identification of him as the perpetrator. Additionally, Thomas contends that during the hearing on his motion to suppress, the trial court violated his right against compelled self-incrimination, as guaranteed by the Georgia Constitution. Thomas further asserts that the trial court erred in denying

both his motion for a directed verdict on the charge of kidnapping and his motion for a mistrial. For reasons explained more fully below, we find no error and affirm.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict." (Citation and punctuation omitted.) *Maddox v. State*, 346 Ga. App. 674, 675 (816 SE2d 796) (2018). So viewed, the record shows that in the early morning hours of October 16, 2016, the victim, a cabdriver, drove a passenger to an apartment complex in Gwinnett County. When they arrived at the complex, the passenger needed to retrieve money from his apartment to pay the fare. The cabdriver followed the passenger to his apartment, leaving his cab unlocked and with the motor running. As he stood just outside of the passenger's apartment, the driver turned around to check on his cab and saw a man standing next to a now-open door of the vehicle. When the driver approached the man and asked what he was doing, the man responded by pointing a gun at the driver and forcing him to walk back to the passenger's apartment and then into the apartment. Once inside the apartment, the gunman frisked the passenger and demanded money from both the driver and passenger. When the driver responded that they had no money, the gunman hit him in the face with the weapon, took an iPhone from the driver, and left the

2

apartment. Shortly thereafter, the driver returned to his cab and discovered that he was missing approximately $170 in cash, which had been in the cab when he left it.

As he was driving out of the apartment complex, a car driven by his assailant passed the cabdriver. The cabdriver followed the vehicle and, while doing so, called 911. Eventually, the robber lost control of his vehicle and crashed, at which point he abandoned the vehicle and fled on foot. The cabdriver waited at the scene for police, and then reported the circumstances leading to the accident, including the robbery and assault. Inside of the wrecked vehicle, the responding officer located a Samsung mobile phone that the cabdriver identified as having been taken from his cab.

A check of the license plate on the assailant's vehicle showed that the car was registered to Thomas. Police impounded the car and the case was assigned to a robbery detective with the Gwinnett County Police Department. Given that the assailant's car was registered to Thomas, the detective put together a photographic lineup of six pictures, including a mug shot of Thomas the officer pulled from police files. The cabdriver was unable to identify anyone from the initial photographic lineup, in which all of the photos were of men with short hair. The detective subsequently interviewed the cabdriver and learned that his assailant had dreadlocks. Following that interview, the detective obtained a copy of Thomas's drivers license

3

photo, which showed him with dreadlocks. Police then put together a second six-photo lineup, featuring Thomas's driver's license picture. From this lineup, the cabdriver identified Thomas with 90% certainty as his assailant.

Following the police investigation, Thomas was indicted in May 2017 for the crimes at issue.[1] In September 2017, before the case went to trial, police showed the cabdriver a third photo lineup. This lineup again contained pictures of men with dreadlocks, but all the photographs were in color. Thomas's photo, which was identical to the photo in the second lineup, was the only one repeated from the second lineup. Additionally, Thomas's photo was the only one that appeared in all three lineups.

Prior to trial, Thomas moved to suppress the cabdriver's identification of him in the second and third photographic lineups. Additionally, given what he alleged was the impermissibly suggestive nature of the second and third lineups, Thomas asked that the court suppress any in-court identification of him by the cabdriver. At the hearing on the motion to suppress, the State introduced the three photographic

---

[1] The indictment also charged Thomas with an additional count of armed robbery, based on the allegation that Thomas had taken money from the passenger. By the time of trial however, the passenger had been deported, and the State therefore had no testimony to support this charge. Accordingly, the trial court granted a directed verdict in favor of Thomas on this count of the indictment.

lineups, as well as testimony explaining how the lineups were conducted. The State also presented the testimony of the cabdriver, who stated that he got a clear view of his assailant's face at least four times during the incident: when the driver approached the assailant next to his cab; in the breezeway, just outside the passenger's apartment; inside the apartment, as the assailant frisked the passenger; and inside the apartment, when the assailant faced the driver and struck him with the gun.

The cabdriver further testified at the hearing that neither the parking lot nor the living room of the apartment were well-lit, but stated that the breezeway was brightly lit. Thus, when the assailant left the apartment door open, light from the breezeway illuminated the living room. When asked why he could not identify a suspect from the first lineup, the cabdriver responded that all of the individuals pictured had short hair, and he therefore knew that none of them was the man who robbed him. He also acknowledged, on cross-examination, that he did not recognize Thomas's facial features in the first lineup. The cabdriver further testified that he was able to identify Thomas from the second lineup because of both his hairstyle and his facial features. He identified Thomas with 100% certainty from the third lineup because the color photographs made identification easier.

During the cabdriver's testimony at the hearing, the trial court asked Thomas to stand in front of counsel table so the cabdriver could observe Thomas's height and build. The trial court overruled defense counsel's objection to this request, stating that requiring the defendant to stand was not the equivalent of requiring a defendant to testify against himself. After Thomas stood, the court asked the cabdriver if he recognized Thomas as his assailant, and the cabdriver responded affirmatively. When the court asked how he was able to recognize Thomas given that he now had short hair, the cabdriver stated that he recognized only Thomas's face.

After the hearing on the motion to suppress, the trial court entered an order granting Thomas's motion in part and denying it in part. Specifically, the court found that the third photographic lineup was impermissibly suggestive because Thomas's hairstyle appeared different from the other suspects pictured, the photo appeared to be framed differently, and the photo was the only one to appear in both the second and third lineups. The court concluded, however, that both the identification from the second photographic lineup and the cabdriver's in-court identification of Thomas would be allowed. In support of this ruling, the court found that because of lighting and shading, Thomas's facial features in the first lineup were somewhat distorted and the picture therefore did not resemble the photo of Thomas used in the second lineup.

6

The trial court further found that the cabdriver's in-court identification of Thomas had an origin independent of the photographic lineups. The court noted that the cabdriver had the opportunity to observe Thomas at close range during the incident and that the cabdriver's testimony demonstrated that he was "completely focused on [Thomas]" during the incident.

At trial, the State presented the testimony of the cabdriver as to the robbery and subsequent events. The cabdriver also confirmed his identification of Thomas in the second photo lineup and he again identified Thomas in court as his assailant. Additionally, two different police officers testified as to how they identified the assailant's car as belonging to Thomas.

The State also presented evidence that late on the afternoon of the incident, Thomas reported to the Marietta police that his car had been stolen from a hotel parking lot in Marietta. The following day, a man identifying himself as Thomas called the Gwinnett County Police Department to inquire about his car. According to the police officer who answered the call, the man stated that his car had been stolen from Marietta and that some unidentified person told him the car could be recovered from a Gwinnett County impound lot. The Gwinnett County detective investigating the case, however, stated that he did not enter the car into the state database as

7

recovered until "well after" Thomas's phone call to the department. Given this fact, there would be no way for anyone to learn of the allegedly stolen car's location on October 17.

The investigating detective testified that he applied for and obtained a search warrant for Thomas's car. When they executed the search warrant, police found a handgun inside a compartment on the driver's side door, a loaded magazine for that gun, four cell phones, a computer tablet, and two laptop computers. The prosecutor asked the detective if police were "able to identify any of the phones as belonging to Mr. Thomas?" The officer responded: "I did a search warrant on the phones. One phone came back – once the download was done, I was able to access the videos of the phone, and it appears to have belonged to a Hispanic male. I didn't make contact with the person who – . . . ." At that point, the prosecutor interrupted the detective and said, "Let's answer the question. Were you able to determine whether or not any of the phones that you found in the vehicle belonged to Mr. Thomas?" The officer responded, "No."

Following this exchange, defense counsel moved for a mistrial alleging that the officer's testimony indicated the electronic items recovered from the car were stolen property and therefore the State had impermissibly introduced evidence of Thomas's

8

character. The trial court denied the motion, stating that it was for the jury to interpret the evidence, and that the testimony that none of the items in the car belonged to Thomas could support Thomas's claim that the car had been stolen.

At the close of the evidence, Thomas moved for a directed verdict on the charge of kidnapping, arguing that the State had failed to prove the asportation element of that crime. The trial court denied that motion, and the case was submitted to the jury, which found Thomas guilty of the charged crimes. The trial court entered a judgment of conviction on the jury's verdict, and Thomas thereafter filed a motion for a new trial. Following a hearing on that motion, the trial court denied the same. Thomas now appeals from the trial court's order.

1. Thomas claims that the trial court erred in denying his motion to suppress the cabdriver's identification of him as the perpetrator. In reviewing the trial court's order on the motion to suppress, we must view the record in the light most favorable to the trial court's ruling. *Caffee v. State*, 303 Ga. 557, 557 (814 SE2d 386) (2018). Additionally, we must accept the trial court's factual findings if they are supported by any evidence and, as a general rule, we must limit our "consideration of the disputed facts to those expressly found by the trial court." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015).

9

Here, Thomas argues that the trial court should have suppressed the cabdriver's identification of him in both the second photographic lineup and in court. We will set aside a conviction based on pretrial identification by photograph and a subsequent in-court identification "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citation and punctuation omitted.) *Williams v. State*, 272 Ga. 828, 828 (2) (537 SE2d 39) (2000). "An unduly suggestive identification procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, 'This is our suspect.'" (Citation and punctuation omitted.) *Williams v. State*, 290 Ga. 533, 535-536 (2) (a) (722 SE2d 847) (2012). And "[w]e need not consider the issue of irreparable misidentification unless the [photographic line up] is impermissibly suggestive." *Harris v. State*, 332 Ga. App. 789, 791 (2) (775 SE2d 165) (2015).

(a) Thomas argues that the method used in the first and second photographic lineups was unduly suggestive because he was the only individual shown in both lineups. Georgia's appellate courts have held previously, however, that "[t]he fact that [the] defendant's picture was the only one to appear in [two separate] photo spreads does not demonstrate that the spreads were impermissibly [suggestive]." (Citation and

10

punctuation omitted.) *Clark v. State*, 279 Ga. 243, 245 (4) (611 SE2d 38) (2005). See also *Dudley v. State*, 179 Ga. App. 252, 253 (1) (345 SE2d 888) (1986). And "[t]his is especially so" where two different photographs of the defendant were used. *Dudley*, 179 Ga. App. at 253 (1).

In this case, not only were two different photographs of Thomas used in the different lineups, but the trial court expressly found that the two pictures bore little resemblance to one another. Not only did Thomas have different hairstyles in each picture but, as the trial court explained, the bottom portion of the photo used in the first lineup was "obscured, giving no definition to the lower outline of the face of the person displayed in the photo. Furthermore the face of the person portrayed is not uniform in its angle, further[] distorting the features of the person on the right side of the face and lower portion." Based upon our review of the first and second photographic lineups, which are included in the appellate record, we conclude that the trial court's findings on this issue are supported by the evidence. Accordingly, "the trial court was authorized to find that there was no impermissible suggestiveness" in the second photographic lineup. (Citation and punctuation omitted.) *Williams v. State*, 275 Ga. 622, 623 (2) (571 SE2d 385) (2002). See also *Padilla v. State*, 273 Ga. 553, 554 (1) (544 SE2d 147) (2001).

11

(b) In further support of his argument that the trial court erred in denying his motion to suppress, Thomas relies on the trial court's finding that the third photographic lineup was impermissibly suggestive. Given this finding, and because the cabdriver saw the third photographic lineup only three months before the hearing on the motion to suppress, Thomas contends the trial court erred when it refused to suppress the cabdriver's in-court identification of him. We disagree.

As our Supreme Court has explained, "[e]ven if a pretrial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin." (Citation and punctuation omitted.) *Scandrett v. State*, 293 Ga. 602, 603 (2) (748 SE2d 861) (2013). Here, the trial court found that such an independent origin existed, crediting the cabdriver's testimony that he had the opportunity to observe his assailant's face during the incident. Additionally, the court noted that the cabdriver had identified Thomas with 90% certainty in the second photo lineup, which took place almost one year before the third lineup. In light of this evidence, we find no error in the trial court's conclusion that the cabdriver's in-court identification of Thomas had an origin independent of the third photo lineup. See *Scandrett*, 293 Ga. at 604 (2) (an independent origin for identification of the defendant existed where the victim

12

testified "he was in close contact with [the defendant] for as long as 10 minutes, that he got a good look at [the defendant], and that he would never forget the face of the man who shot his friend"); *Clark v. State*, 166 Ga. App. 366, 368 (2) (304 SE2d 494) (1983) (given the victim's testimony regarding his opportunity to observe the defendant at close range, his identification of the defendant did not depend on the photographic lineup, but instead had an independent origin).

3. Thomas asserts that the trial court erred in overruling his objection to being required to stand in front of counsel table at the pretrial hearing so that the cabdriver could observe his height and build. Specifically, Thomas points to the fact that the trial court overruled the objection on the grounds that requiring a defendant to stand was non-testimonial. The right against compelled self-incrimination guaranteed by the Georgia Constitution,[2] however, "was long ago construed to . . . cover incriminating acts [as well as testimony] and, thus, is more extensive than the Supreme Court of the United States's interpretation of the right against compelled self-incrimination guaranteed by the Fifth Amendment." *Olevik v. State*, 302 Ga. 228, 240 (2) (c) (ii) (806 SE2d 505) (2017). Accordingly, Thomas reasons that the Georgia

---

[2] Ga. Const. Art. I. Sec. I. Par. XVI (1983).

13

Constitution prohibited the trial court from asking him to stand for observation by the cabdriver.

Assuming arguendo that the trial court's ruling violated Thomas's rights under the Georgia Constitution, however, we conclude that the violation provides no basis for reversal. Even an error of constitutional magnitude may be harmless where the record shows "beyond a reasonable doubt that the error did not contribute to the verdict." (Citation and punctuation omitted.) *McCord v. State*, 305 Ga. 318, 321 (2) (a) (825 SE2d 122) (2019). And here, the record shows that observing Thomas while he was standing did not contribute to the cabdriver's identification of Thomas as his assailant. After the trial court had Thomas stand in front of counsel table, it questioned the cabdriver as to whether he recognized Thomas. The cabdriver responded that he recognized Thomas's face but that he did not recognize "anything else" about Thomas other than his face. Thus, the cabdriver's testimony showed that he did not recognize Thomas from either his height or his build. Any error in requiring Thomas to stand, therefore, was harmless. See *McCord*, 305 Ga. at 324 (2) (a) (i).

4. Thomas contends that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of kidnapping.[3] "The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction." (Citation and punctuation omitted.) *Crawford v. State*, 301 Ga. App. 633, 635 (1) (688 SE2d 409) (2009). Accordingly, provided the record shows "some competent evidence, even though contradicted, to support each fact necessary" to establish the crime of kidnapping, we will affirm the the jury's verdict. (Citation and punctuation omitted.) Id.

Kidnapping occurs where a person "abducts or steals away another person without lawful authority or warrant and holds such other person against his or her

---

[3] Thomas does not contest the legal sufficiency of the evidence of his guilt for the crimes of armed robbery, aggravated assault, possession of a firearm during the commission of a felony, and entering an automobile with intent to commit theft. However, we have reviewed the record and conclude that the evidence presented at trial authorized the jury to find Thomas guilty beyond a reasonable doubt of those crimes. See *Wade v. State*, 305 Ga. App. 819, 821 (701 SE2d 214) (2010) ("[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld") (citation and punctuation omitted). See also OCGA §16-8-41 (a) (defining armed robbery); OCGA § 16-5-21 (a) (defining aggravated assault); OCGA §16-11-106 (b) (defining possession of a firearm during the commission of a felony); OCGA §16-8-18 (defining entering an automobile with intent to commit theft).

15

will." OCGA § 16-5-40 (a). And "slight movement" of another is sufficient to satisfy the asportation element of kidnapping, unless that slight movement "occurs while in the commission of any other offense . . . if such movement is merely incidental to such other offense." OCGA § 16-5-40 (b) (1).

Here, Thomas asserts that the evidence showed that the movement of the cabdriver from the parking lot to inside the passenger's apartment was merely incidental to the crime of armed robbery, and therefore the State failed to prove the asportation element of kidnapping. We disagree. Under the kidnapping statute, "[m]ovement shall not be considered merely incidental to another offense if it: (A) [c]onceals or isolates the victim; (B) [m]akes the commission of the other offense substantially easier; (C) [l]essens the risk of detection: or (D) [i]s for the purpose of avoiding apprehension." OCGA § 16-5-40 (b) (2). In this case, the evidence showed that Thomas forced the cab driver at gunpoint to move from an open parking lot, where they might have been observed by passersby or other apartment residents, and into an apartment. This movement was not an inherent part of the armed robbery, as the robbery could have been completed in the parking lot, next to the victim's vehicle. Moreover, the movement of the cabdriver into the apartment concealed him and lessened the risk that the robbery would be detected. Thus, the movement of the cab

16

driver also served to make the commission of the armed robbery substantially easier. The evidence, therefore, was sufficient to allow reasonable jurors to conclude that the movement of the victim was not incidental to the robbery. See *Alexander v. State*, 348 Ga. App. 859, 865 (1) (b) (825 SE2d 405) (2019) (movement of victim into bathroom of apartment was not incidental to the crime of robbery, as the purpose of that movement was to isolate or conceal the victim and make commission of the robbery easier); *Taylor v. State*, 344 Ga. App. 122, 131-132 (1) (g) (809 SE2d 76) (2017) (asportation element of kidnapping satisfied by evidence showing the victim was moved away from the doorway and into an interior room of the apartment, thereby concealing and isolating the victim, reducing the likelihood of detection during the robbery, and enabling the defendants to complete the robbery). Accordingly, the trial court did not err in denying Thomas's motion for a directed verdict on the charge of kidnapping.

5. Finally, Thomas contends that the trial court erred in denying his motion for a mistrial. Specifically, Thomas argues that the investigating detective's testimony that there was no evidence that any of the phones found in Thomas's car belonged to Thomas, indicated that Thomas was in possession of stolen property. Thus, Thomas claims that this testimony impermissibly put his character in issue.

17

"Whether to grant a mistrial based on [the introduction of] improper character evidence is within the discretion of the trial judge." *Cuyler v. State*, 344 Ga. App. 532, 537 (2) (811 SE2d 42) (2018). On appeal, we will not disturb the trial court's exercise of that discretion unless the record shows that "a mistrial is essential to preserve the defendant's right to a fair trial." (Citation and punctuation omitted.) *Smallwood v. State*, 334 Ga. App. 224, 224 (779 SE2d 1) (2015). In determining whether an abuse of discretion has occurred, we examine a number of factors, "including the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety." (Citation and punctuation omitted.) *Graves v. State*, 298 Ga. 551, 555 (1) (783 SE2d 891) (2016). We also consider "whether the reference to the improper character evidence is isolated and brief, whether the jury's exposure was repeated or extensive, and whether the introduction of the objectionable evidence was inadvertent or whether it was deliberately elicited by the State." (Citation and punctuation omitted.) *Cuyler*, 344 Ga. App. at 538 (2).

In this case, the testimony at issue did not directly implicate Thomas in any crime and, as the trial court pointed out, the jury could have interpreted that testimony as supporting Thomas's contention that his car had been stolen. And while the trial

18

court did not give a curative instruction, defense counsel did not request one. Moreover, the objectionable testimony was very brief and was not elicited by the State. Indeed, the prosecutor interrupted the detective's non-responsive testimony and instructed him to respond to the question asked. Finally, the evidence against Thomas was substantial, as it included eyewitness testimony identifying him as the perpetrator and the undisputed evidence that the perpetrator drove Thomas's car. Given these facts, a mistrial was not essential to preserve Thomas's right to a fair trial, and the trial court did not abuse its discretion in denying Thomas's motion. See *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007) (passing reference to a co-defendant's incarceration did not warrant a mistrial where the testimony constituted a nonresponsive answer and the evidence of the defendant's guilt was substantial); *Carr v. State*, 282 Ga. 698, 701-702 (3) (653 SE2d 472) (2007) (no error in denying defendant's motion for a mistrial where the objectionable statement resulted from a nonresponsive answer and defense counsel did not request that the trial court instruct the jury to disregard that answer).

For the reasons set forth above, we affirm the trial court's order denying Thomas's motion for a new trial.

*Judgment affirmed. Gobeil and Pipkin, J. J., concur.*

19