## 48642. DUGAN v. THE STATE.

Clark, Judge. For decision are rulings adverse to appellant on her motions to suppress evidence forming the basis for two indictments, one for possession of marijuana and the other on four counts of burglary. The evidence consisted of most of the forty-four items of personalty obtained under the first warrant which had been obtained as fruits of a search sought originally for seizure of marijuana. After that search a second warrant had been secured for "one statue of a Cobra snake and other items that are fruits of the crime of burglary." (R. 21). Fifty-eight items were taken during the second search.

During their first search of the house for marijuana which was found in the bedroom, the officers had observed numerous small electrical appliances stacked in one room. By coincidence, one of the two policemen making the search was a member of the burglary squad who had been enlisted to accompany the single available narcotics officer. This detective identified an Hitachi television set by serial number as having been reported stolen. The result of this first search was the seizure of 44 items which police believed to be stolen. Upon the owner of the television set being contacted mention was made of a statue of a cobra snake which previously had been overlooked. When the stolen goods report had been made the officer remembered he had seen such a snake statue during the first search, he then secured another warrant the next day, and returned to the house, this time removing 58 items.

1. Defendant attacks the first warrant for possession of marijuana on the ground that it lacked probable cause.

"'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the

factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, 338 U. S. 160, 175 [69 SC 1302, 93 LE 1879]. Probable cause exists where 'the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U. S. 132, 162 [45 SC 280, 69 LE 543, 39 ALR 790]." Draper v. United States, 358 U. S. 307, 313 (79 SC 329, 3 LE2d 327).

Defendant contends that under Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) and Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) where the identity of the informant is not disclosed, there are two separate tests: the credibility of the informant and the reliability of the information. Both of these criteria must be met by the information provided to the magistrate. Aguilar and Spinelli state: Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances relied on by the person providing the information and some of the underlying circumstances from which the affiant concluded that the informant, whose identity was not disclosed, was credible or his information reliable.

Actually Georgia through case law has set standards which require examination of both the credibility of the informer and the reliability of the information, although the particular expressions used may vary from case to case.

Sams v. State, 121 Ga. App. 46 (172 SE2d 473) has often been referred to because it interpreted the Spinelli and Aguilar cases, setting forth the following guidelines. "Where the hearsay of an informer is relied upon the affidavit must meet two tests: (1) The reasons for the informer's reliability must be furnished and (2) it must either state how the informer obtained the information or the tip must describe the criminal activity in such detail that the magistrate may know it is more than a casual rumor circulating in the underworld or an accusation based merely on the individual's general reputation. Sams v. State, 121 Ga. App. 46 (172 SE2d 473)." Cain v. State, 128 Ga. App. 146, 147 (195 SE2d 797).

We have held that where the information's source is hearsay, then

the informant's reliability or credibility is to be shown by indicating whether the information he had given in the past has aided in current police investigations, arrests or convictions, the approximate number of each and over what period of time the information was given. *Fowler v. State,* 128 Ga. App. 501, 503 (197 SE2d 502); *Buck v. State,* 127 Ga. App. 72 (192 SE2d 432); *Dresch v. State,* 125 Ga. App. 110 (186 SE2d 496); *Steele v. State,* 118 Ga. App. 433 (3c) (164 SE2d 255).

In the instant case the informer's reliability is supported by his having been "a confidential and reliable informant who is known personally to me and who has supplied me with information over the past year that has resulted in the arrests of over ten persons on drug charges and who has given intelligence information on over three investigations that are now in process and has always proven to be true and accurate information." (R. 16).

Defendant argues that the affidavit does not support informer's reliability since there is no indication that he has any knowledge of marijuana. Despite his previous information on drug charges, there is no proof that he ever gave information concerning possession and selling of marijuana. Defendant appears to be saying that the informer could have been mistaken and have been sold something other than marijuana.

The court in response to this argument stated: "The court holds as follows: Number 1, that my common sense, which I cannot possibly separate from my own nature, anyone who tells me that man had to know something in order to pay $20 for a bag, and that is alleged in the affidavit. Added to the other reasons, the motion to suppress is denied." (T. 71).

"We also see no merit in the suggestion that the arrests must have been for drug violations to support reliability. It may well be that a narcotic informer's experience is customarily with narcotics violations, but information leading to arrest for theft, rape, treason or any offense is just as much a statement of experience supporting reliability as an arrest for a drug offense." United States v. Shipstead, 433 F2d 368, 372.

In accord with the second test in *Sams,* we have stated that to differentiate a casual rumor from criminal activity which would substantiate probable cause, the reliability of the information can be demonstrated by stating how the information was obtained, by detailing the criminal activity, or by independent corroboration. See *Davis v. State,* 127 Ga. App. 76 (192 SE2d 538); *Register v. State,* 124 Ga. App. 136 (183 SE2d 68); *Thrall v. State,*

122 Ga. App. 427 (177 SE2d 192); *Johnson v. State,* 121 Ga. App. 477 (1) (174 SE2d 246). Obviously, the information in the affidavit may fall into several of the categories and it is the magistrate who must determine whether the total amounts to probable cause. In accord, *Johnston v. State,* 227 Ga. 387 (181 SE2d 42); *Campbell v. State,* 226 Ga. 883 (178 SE2d 257).

Sub judice the affidavit continues to describe how the informant obtained such information: "This informant stated on this Jan. 16, 1973 and he stated that he had been in the above location within the past twelve hours and that he had witnessed a quantity of marijuana at this location and has purchased a quantity within this twelve hours period of time and paid twenty dollars for the bag of marijuana." (R. 16).

Further there is additional corroboration: "Upon checking with other members of the narcotic squad I found that there has been two anonymous phone calls on this subject and all the name was that of 'Dugan' and that he was supposed to be involved in the sales of marijuana. These investigators had checked the location and found that this was D. Dugan's place of residence and a check of the phone book revealed that this was his location also." (R. 16-17).

Defendant argues that this test is not met since the affidavit does not name the person from whom the informer purchased the marijuana. However, the affidavit does give the location, an approximate time and the amount paid, which considered with the independent corroboration that Dugan lived there and that Dugan had been implicated with drug traffic by several anonymous phone calls would substantiate the magistrate's conclusion that probable cause exists. See *Grant v. State,* 130 Ga. App. 237, where an affidavit given on similar facts was held to show sufficient probable cause.

"Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be

largely determined by the preference to be accorded to warrants. Jones v. United States [362 U. S. 257, 270 (80 SC 725, 4 LE2d 697, 78 ALR2d 233)]." United States v. Ventresca, 380 U. S. 102, 109 (85 SC 741, 13 LE2d 684).

2. The first warrant and the search thereunder were legal. The seizure of marijuana was valid. The question is whether the other items exceeding 40 in number were legally seized under a warrant for possession of marijuana.

"In Georgia 'when the peace officer is in the process of effecting a lawful search,' he may discover or seize 'any stolen or embezzled property, any item, substance, object, thing or matter, the possession of which is unlawful, or any item, substance, object, thing or matter, other than the private papers of any person, which is tangible evidence of the commission of a crime against the laws of the State of Georgia.' Ga. L. 1966, pp. 567, 568; Code Ann. § 27-303 (e). Such seizure as was had in this case has been expressly held not to be a violation of constitutional guarantees either State or Federal. *Cash v. State,* 222 Ga. 55, 58 (148 SE2d 420); Harris v. U. S., 331 U. S. 145 (67 SC 1098, 91 LE 1399); Palmer v. U. S., 203 F2d 66 (CCA, DC); Johnson v. U. S., 203 F2d 539 (CCA, DC); U. S. v. Eisner, 297 F2d 595 (CCA 6)." *Stanley v. State,* 224 Ga. 259, 260 (161 SE2d 309), reversed on other grounds in Stanley v. Georgia, 394 U. S. 557 (89 SC 1243, 22 LE2d 542). See also *Hutto v. State,* 116 Ga. App. 140, 143 (4) (156 SE2d 498).

The police in searching the house found marijuana and pipes with residue in a bedroom numbered 6 on the inventory sheet. The bedroom also contained papers with defendant's name, lingerie and other feminine apparel which would denote that the room belonged to a woman. Defendant was not present at the time of the search.

Additionally, they found in the room adjacent to the living room numbered 1 on the inventory sheet, television sets, stereo equipment, typewriters and other items. All were stacked on top of each other in the center of the floor. There were other television sets and stereo equipment in other rooms including the attic numbered 8 and the basement numbered 7 on the inventory.

An overabundance of television sets, stereo equipment and other readily movable items, which can be quickly dispersed due to the difficulty in the owner's identifying the item unless he had recorded the serial number, would arouse suspicion that the

items were stolen. Certainly tangible evidence is shown by the clincher here when one television set was identified as stolen and the statement by defendant's son that he did not know who the items belonged to and had never seen the items before when asked if anybody owned it. (T. 34, 89).

"We do not believe that the law requires that the officer *know* the goods to be stolen property at the time they are seized. It is enough that he have probable cause to believe that this is the case." *Campbell v. State,* 226 Ga. 883, 888 (178 SE2d 257).

"Not only may such contraband be seized if related to the crime in connection with which the search is made, but items related to other crimes may also be seized without prior enumeration in the warrant. Harris v. United States, 331 U. S. 145 (67 SC 1098, 91 LE 1399), overruled on other grounds, Chimel v. California, 395 U. S. 752 (89 SC 2034, 23 LE2d 685)." *Butler v. State,* 130 Ga. App. 469.

Here both marijuana and stolen goods were seized. The motion to suppress was properly denied as to marijuana and as to the goods stacked in the center of the room numbered 1, which were obviously not in use and among which the stolen television set was identified.

The property seized in the attic numbered 8 on the inventory, which is not a room but a small platform in the rafters, consisted of a turntable, an 8-track stereo and a radio tape deck and the items removed from the basement being an 8-track player, a turntable, recorder, transistor radio and binoculars were also validly seized since tangible evidence existed that stolen property was located in the house and since these items also were in a storage area (attic and basement) and were not being used by the occupants. Therefore the officers had probable cause to believe that these items were results of burglaries and, therefore, contraband. Denial of the motion to suppress as to these items is affirmed.

However, as to the items in use in the living room, dining room and bedrooms, although they were of the same type of goods as those validly seized, they were being used by the occupants in the rooms the occupants used. These movables were not in storage and the officer testified that some were plugged in and none were stated to be in cartons. There is no tangible evidence that such items were stolen and the officer not only did not know that the items were stolen but there were no circumstances giving rise to probable cause that these were contraband other

than the assumption that since some items were stolen, these could also have been. These items were illegally seized and the motion to suppress should be granted as to the items in the living room, dining room and two bedrooms, with the exception of marijuana and the pipes.

This court affirms that to permit an officer to enter a home under a valid search warrant and then to extend his search and seize every item in the house that he thinks might possibly be connected with a crime, where there is no substantiation by circumstance but just suspicion, would make "but an empty shell of what was intended by the framers of these great guaranties of liberty to be the living seed of freedom. The Bills of Rights were ordained and established to protect the citizen against his public officers. A part of the first provision of the Constitution of the State of Georgia (Art. I, Sec. I, Par. I) provides as follows: 'Public officers are the trustees and servants of the people, and at all times amenable to them.' The foregoing decisions of our Supreme Court, coupled with the law not in conflict therewith, say in effect to the peace officers of this state, 'You shall not make an unreasonable search and seizure of the home of a citizen, because his home is his castle. The breaking down of his door is a trespass for which you are responsible both civilly and criminally. An unlawful search and seizure by you amounts to a violation of the most sacred rights given under our organic law. However, if you do make such a search, bring the evidence you thus obtained into a court of justice, and it will be given the same consideration as evidence honorably obtained.'" *Winston v. State,* 79 Ga. App. 711, 714 (54 SE2d 354). See also *Raif v. State,* 109 Ga. App. 354, 356 (136 SE2d 169).

3. As to the second warrant issued for "one statue of a Cobra Snake and other items that are fruits of the crime of burglary" (R. 21), the officers had seen a statue of a snake in the house and upon being told that such a statue had been stolen, had sufficient probable cause to request that a warrant be issued for it. Clearly under the warrant the officers were entitled to seize the snake, but since it had been removed, were the other items validly seized? The officers had just searched the house and certainly had an idea as to what items remained. The officers did not testify that the remaining 58 items had not been in the house when the previous search had taken place. The warrant did not name specifically or even generically any items other than the snake.

*Butler v. State,* 130 Ga. App. 469, supra, held that, "Though specificity is to be desired, 'When circumstances make an exact description of instrumentalities, a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking.' James v. United States, 416 F2d 467, 473 (5th Cir.) cert. den., 397 U. S. 907."

Sub judice, the officers did not even comply with the minimum requirement as denoted in *Butler.* The warrant is general and cannot be upheld insofar as the items seized pursuant to the general phrase "the fruits of the crime of burglary."

"There must be a bona fide search for the item sought to be found, but if, in the course of an authorized search, another contraband is found on the party or premises searched, the officer is authorized to seize it, for the search, though not productive of that which was sought, was legal. Cf. *Cash v. State,* 222 Ga. 55, 58 (148 SE2d 420)." *Bostwick v. State,* 124 Ga. App. 113, 116 (182 SE2d 925).

Although it would be a better practice to enumerate any stolen items which might be found at the location to be searched, goods which the police recognize as stolen may be seized. But there must be probable cause, not just conjecture. Here the officer said that the owner of the snake had also mentioned: "The gargoyle statue about that tall. These are the type that you might see on cathedrals. Two of those, the silver cobra snake, and a little wooden statue approximately so high." (T. 81). Therefore, these items would be recognized by the officers as contraband and were seizable, but there is no testimony in the transcript from which tangible evidence or probable cause could be produced to support the seizure of the remaining items.

"The distinction between those cases [Marcus v. Search Warrant, 367 U. S. 717 (81 SC 1708, 6 LE2d 1127); Stanford v. Texas, 379 U. S. 476 (85 SC 506, 13 LE2d 431)] and this case, which to our mind is most-pertinent, is that in those cases the warrants left to the seizing officer's own judgment and opinion what books, magazines and papers were subject to seizure under the warrant and this decision in each case was largely dependent upon a matter of opinion. . . [W]e conclude that so long as the determination which he [the officer executing the search warrant] is required to make is a determination of a matter of fact as distinguished from a determination of a matter of opinion the warrant is valid." *Strauss v. Stynchcombe,* 224 Ga. 859, 866 (165 SE2d 302). However, in the instant case, the officer's

determination would be solely a matter of opinion as to what items were stolen excepting the statues which were described. Consequently, all items other than the statues are to be suppressed.

4. This case is remanded to the trial judge with the direction that the motion to suppress in regard to indictment No. 15178, possession of marijuana be denied as to the seizure of marijuana, and any drug related items such as pipes, and the stolen goods seized from the room adjacent to the living room numbered 1 which contained 17 items, the attic numbered 8 which contained 3 items and the basement numbered 7 which contained 5 items. But that the motion to suppress be granted as to the remaining items of the original forty-four.

Further on the second indictment, No. 15177, for 4 counts of burglary, that the motion to suppress be granted as to all goods seized with the exception of the gargoyle statues and the wooden statue.

*Judgment affirmed in part; reversed in part. Hall, P. J., concurs. Evans, J., concurs in the judgment only.*

SUBMITTED OCTOBER 3, 1973 — DECIDED JANUARY 7, 1974.

*Verlyn C. Baker,* for appellant.
*Richard Bell, District Attorney, Carl Puls,* for appellee.


