## 65638. FRANKLIN v. THE STATE.

BIRDSONG, Judge.

Otis Franklin was convicted for the crimes of distribution of marijuana on December 2, 1981, and possession of more than an ounce of marijuana on December 3, 1981. He was sentenced to 15 years for distribution and 10 for possession, with five to serve, followed by the two 10-year periods to be served concurrently on probation.

The facts, though in dispute, when viewed in the light most supportive of the jury's verdict of guilty show that state narcotic agents, through an informer (Clemons) sought to make a controlled purchase of two pounds of marijuana from Franklin's co-accused (Mency). On the night of the purchase the officers had delivered into Clemons' possession $720 in marked money from which the serial numbers of the several bills of currency had been recorded. When it was determined that Mency did not have physical possession of the "pot," surveillance was established upon the purported place of the sale, a trailer occupied by Franklin. Clemons and Mency proceeded to Franklin's trailer, where according to Clemons, Franklin was paid the $720 in marked money, and Franklin delivered approximately two pounds of marijuana in a white plastic bag. When Clemons and Mency left the trailer, their vehicle was stopped by the surveilling officers and the white bag with the marijuana was recovered from Clemons. Armed with a search warrant, the officers went back to the trailer and upon presentation of the warrant were allowed entry into the trailer. A search disclosed the $720 (claimed by Franklin) and paraphernalia normally associated with distribution and/or use of marijuana such as cigarette papers in large quantities, scales and various sized plastic bags, but no additional marijuana. The officers remained in the trailer through the remainder of the night and early in the morning called in a search dog and handler.

Leading away from the back door of the trailer was a well defined path leading to the edge of a plowed field. Near the field and leading away from the path was a set of recently made footprints ending at a pile of cut grass. At this pile of cut grass the dog alerted. The handler then retrieved a plastic bag containing four ounces of marijuana.

The evidence also showed that Franklin, his wife and children lived in a trailer located on Franklin's father-in-law's homesite. The path leading from the rear door of Franklin's trailer went by a shed often utilized by the father-in-law. Lastly there was evidence that while Franklin was in pre-trial confinement, he wrote a letter to a female friend which contained comments allowing an inference that Franklin was seeking to discourage the testimony of material witnesses. Apparently the letter through the censoring process fell into the control of the state. The state successfully introduced the contents of this letter in rebuttal over the objection by Franklin that it was a statement in the hands of the state which was not delivered in response to a demand made pursuant to the provisions of OCGA § 17-7-210 (Code Ann. § 27-1302) at least ten days before trial. Franklin now brings this appeal enumerating two alleged errors. *Held:*

1. In his first enumeration, Franklin contends the only marijuana attributable to him was the two pounds purchased on the night of December 2, and that consequently the verdict of guilty and sentence for possession of marijuana on December 3 constituted separate convictions and sentences for distribution and possession of the same marijuana, a prohibited result. See *Estevez v. State,* 130 Ga. App. 215 (202 SE2d 686), affirmed in *State v. Estevez,* 232 Ga. 316 (206 SE2d 475). Under the circumstances, Franklin contends the evidence does not show exclusive control or possession by him of the four ounces found in the grass pile behind his trailer on the morning of December 3 (i. e., he argues the equal access rule applies) and thus the only possession proved was of the two pounds.

We disagree. The evidence showed that Franklin was a dealer in marijuana. He was the head of the household of a residence from which a path and footsteps pointed unerringly to a cache of additional marijuana packaged in a bag similar to others found in his residence. His father-in-law who might have an equal interest in items found on his (the father's) property was shown to be no dealer in marijuana, having neither knowledge nor inclination, and in fact denying any connection with the trafficking in marijuana. At best such evidence possibly could give rise to a joint possession of the owner of the larger tract and the principal resident of the portion of the larger tract upon which marijuana was found. *Allums v. State,* 161 Ga. App. 842, 845 (288 SE2d 783). Moreover, the "beaten path" doctrine, now a part of the body of law of this state, allows connection

of contraband found in close vicinity to a house so as to authorize rational jurors to conclude beyond reasonable doubt that the primary resident of that house owned or had control over the contraband. *Brooks v. State,* 140 Ga. App. 371, 372 (231 SE2d 138). See also *Rothfuss v. State,* 160 Ga. App. 863, 865 (288 SE2d 579). Though circumstantial, we find sufficient evidence to support beyond reasonable doubt Franklin's sale of two pounds of marijuana on December 2 and possession of a separate four ounces of marijuana on December 3. *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528). This enumeration is without merit.

2. In his second enumeration, Franklin urges a violation of OCGA § 17-7-210 (Code Ann. § 27-1302). Franklin, through counsel made proper motion (Code Ann. § 27-1302) for delivery of any and all *statements* made by the defendant then in the hands of the state at least ten days before trial. In view of the failure of the state to comply with the provisions of the statute, Franklin now contends the court erred to his substantial prejudice in allowing the state to use his letter in rebuttal.

We find the ingeniousness of this argument more persuasive than its merit. We have no disagreement with Franklin's contention that any "statement" was subject to disclosure and delivery. However, the threshold question is whether a letter voluntarily written to a stranger to the proceedings, through no prompting or other solicitation by the state, constitutes a "statement."

We start with the premise that the full protection of constitutional protections is afforded an accused who is questioned by the state when an investigation has advanced to the critical stage, i. e., the accused is a suspect. Such statements clearly are discoverable upon proper motion. Is all other evidence developed by the state through its independent investigation but attributable to and considered to be an admission by the accused also a "statement" subject to disclosure? We think not. For example, we do not consider incriminating statements made voluntarily to a cellmate (not acting as an agent for the state for that purpose who solicits the information) which subsequently are brought to the attention of the state by the cellmate, are "statements" of the accused subject to disclosure. To require such disclosure would allow the defendant unfettered meandering through the government's investigatory files. A case, not directly in point, but pointing to this result is *Holbrook v. State,* 162 Ga. App. 400, 401 (291 SE2d 729). In that case Holbrook made statements at the scene of the drug buy and before he was under suspicion. This court observed first of all that the statements sought were not "custodial statements." It was then held: " 'A *notice to produce* cannot be used to enable defense counsel to examine, in

advance of trial or evidentiary hearing, the contents of the district attorney's file. [Cit.]. . . [A] notice to produce cannot be used in a criminal case to require the production of the district attorney's work product; reports, memoranda and documents in the files of law enforcement officers; addresses and telephone numbers of the state's witnesses; or the names and addresses of other persons with knowledge of the facts. . . .' *Wilson v. State,* 246 Ga. 62 (1) (268 SE2d 895)."

Though the letter in question came into the possession of the state through its power of censorship, the purpose of the censorship was to aid in security and maintenance of discipline in the confinement facility and not to aid in investigatory procedures or perfect criminal files. We hold that a letter voluntarily written by a prisoner to a stranger to the proceedings which comes to the attention of the state through its power to maintain discipline in its detention facilities and not at the request of or by subterfuge of the state (i. e., not a custodial statement) is not the product of "custodial interrogation" and thus is a part of the work product of the state not subject to compelled discovery except to the extent that such letter may be exculpatory and subject to disclosure under Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215).

Inasmuch as Franklin admitted the authorship of the letter and he had dispatched it to the addressee, we find no error, procedural or substantive, in its admission in rebuttal.

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED APRIL 22, 1983.

*John W. Sheffield III,* for appellant.
*John R. Parks, District Attorney, R. Rucker Smith, Assistant District Attorney,* for appellee.