## A91A2075. LOWE v. THE STATE.
(416 SE2d 750)

ANDREWS, Judge.

Lowe was indicted for armed robbery along with two co-defendants and appeals his conviction. Evidence showed that Lowe and several accomplices robbed the victim at gunpoint, taking the victim's money and automobile.

While Lowe and co-defendant Delk were both incarcerated prior to trial, Delk received an unsigned letter with a return address from the jail where Lowe was being held. The letter personally and affectionately refers to Delk, advises her to have her lawyer withdraw a statement she had previously given to the police relating to the robbery, describes a different version of events exonerating the anonymous author of responsibility for the robbery, and appears to en-

courage Delk to adopt the version of events described in the letter.

To prove Lowe wrote the letter, the State obtained a warrant to search his prison cell, where he was being detained prior to trial, for "papers and documents containing the handwriting of the [defendant]." Pursuant to the warrant executed on February 6, 1991, the State seized several papers containing Lowe's handwriting, and compared the handwriting on the seized papers to the letter. Based on the comparison, the State introduced the letter at trial along with expert testimony to prove Lowe wrote it. The seized papers were not introduced into evidence. On January 17, 1991, Lowe filed a request pursuant to OCGA § 17-7-210 that he be provided a copy of any statement given by him while in police custody. The State provided Lowe with a copy of the letter and the seized papers on the day the trial commenced on March 11, 1991.

Three of Lowe's four enumerations of error have to do with the State's introduction into evidence of the unsigned letter received by co-defendant Delk and expert testimony linking the letter to Lowe. He argues on appeal: (1) that the trial court erred in not granting his motion to suppress the fruits of the search which enabled the State to show he wrote the letter; (2) and (3) that pursuant to the State's failure to timely comply with his OCGA § 17-7-210 request, the trial court should have barred admission of the letter and the expert testimony based on the seized handwriting samples; and (4) that the evidence was insufficient.

1. There was no error in the denial of Lowe's motion to suppress. In the motion Lowe claims that the warrant was obtained without probable cause, the items sought in the warrant were not particularly stated, and the seized items were protected as "private papers" under OCGA § 17-5-21 (a) (5).

Contrary to the State's contentions, we conclude that a warrant for the search was required. Although in *Hudson v. Palmer*, 468 U. S. 517 (104 SC 3194, 82 LE2d 393) (1984), the Supreme Court held in a 5-4 decision that a prisoner has no reasonable expectation of privacy in his prison cell that enables him to invoke the protection of the Fourth Amendment, that decision was rendered in the context of a "shakedown" search conducted by prison authorities, and was largely based on the conclusion that a prisoner's expectation of privacy must always yield to "the paramount interest in institutional security." Id. at 528.[1] The purpose of this prosecutor instituted search was not to maintain security and discipline in the prison, but to further the State's effort to obtain a conviction against a pre-trial detainee. We

---

[1] Even weighed against the needs of institutional security, a prisoner retains certain fundamental rights of personal privacy. See *McCullough v. State*, 177 Ga. App. 741 (341 SE2d 241) (1986).

will not apply the rationale of *Hudson* to deprive the defendant of all Fourth Amendment protection where no institutional need is served by the search. Accord *United States v. Cohen*, 796 F2d 20 (2d Cir. 1986) (pre-trial detainee "retains an expectation of privacy within his cell sufficient to challenge the investigatory search ordered by the prosecutor" for the purpose of gathering evidence to bolster the State's pending case); *State v. Neely*, 462 NW2d 105, 112 (Neb. 1990); see also LaFave, Search & Seizure, Vol. 4, § 10.9 (2d ed. 1987).

The affidavit given by an investigating officer in support of the application for a search warrant describes the reported armed robbery including the involvement of Delk and three accomplices, states that Delk has given a statement implicating Lowe and another co-defendant as two of the accomplices, and describes the letter received by Delk, including the suggestions that she withdraw her statement and adopt a proposed version of events related to the robbery. The affidavit indicates that the letter is unsigned so that it is necessary to determine who wrote it by comparing the letter to known handwriting samples of Lowe and the other co-defendant implicated by Delk.

Based on the application a warrant was issued to search Lowe's jail cell for "papers and documents containing the handwriting of the [defendant]," and alleging that the papers and documents were in violation of OCGA § 16-8-41 (armed robbery) and OCGA § 16-10-72 (subornation of perjury). Given all the circumstances set forth in the affidavit, a fair probability was shown to believe that one of Delk's two co-defendants wrote the letter, and that a search of Lowe's jail cell would produce evidence of his handwriting for purposes of comparison. In determining whether probable cause exists under the totality of the circumstances, the task of the magistrate is to make a practical, common sense decision that there is a fair probability the items sought will be found in a particular place, and the duty of the reviewing court is to ensure that there was a substantial basis for the determination. *Mize v. State*, 173 Ga. App. 327, 328 (326 SE2d 782) (1985). Doubtful cases are resolved in favor of the preference for warrants. *Mincey v. State*, 180 Ga. App. 898, 900 (350 SE2d 852) (1986). Under these standards, there was a sufficient probable cause for issuance of the warrant. Moreover, the handwriting samples sought in the warrant were described with sufficient particularity where, because of their nature, only a generic description was possible. *Dugan v. State*, 130 Ga. App. 527, 533-534 (203 SE2d 722) (1974).

The seizure of papers to obtain a sample of Lowe's handwriting did not violate the "private papers" exception to the permissible scope of search warrants under OCGA § 17-5-21. A search warrant may issue for the seizure of "[a]ny item, substance, object, thing, or matter, other than the private papers of any person, which is tangible evidence of the commission of the crime for which probable cause is

shown." OCGA § 17-5-21 (a) (5). Even if the documents were Lowe's private papers, they were seized only for the purpose of comparing the handwriting style contained therein with the letter to Delk. The content of the seized papers was not introduced at trial or otherwise used by the State to advance prosecution of Lowe. Although a defendant may not be compelled to give a handwriting sample, a defendant has no reasonable expectation of privacy in existing examples of the physical characteristics and style of his handwriting, nor does the State's use of such handwriting sample constitute a violation of a defendant's Fifth Amendment protection against self-incrimination. *Reeves v. State*, 139 Ga. App. 214, 215 (228 SE2d 201) (1976); *Hudson v. State*, 188 Ga. App. 684 (374 SE2d 212) (1988); *State v. Armstead*, 152 Ga. App. 56 (262 SE2d 233) (1979); *Guy v. State*, 138 Ga. App. 11 (225 SE2d 492) (1976). The creation of a "private papers" exception by the Legislature pursuant to the Searches & Seizures Act, Ga. L. 1966, pp. 567, 568 (OCGA § 17-5-21) was clearly intended to promote a privacy interest in the contents of documents which were not actual instrumentalities of a crime. See *Tuzman v. State*, 145 Ga. App. 761, 766 (244 SE2d 882) (1978). The statute must be construed in light of the Georgia Constitutional provisions granting immunity from unreasonable searches and seizures which are substantially the same as the Fourth Amendment provisions of the United States Constitution. *Pruitt v. State*, 123 Ga. App. 659, 661-664 (182 SE2d 142) (1971). The principal purpose of these constitutional provisions is to protect privacy not property interests. *Warden v. Hayden*, 387 U. S. 294 (87 SC 1642, 18 LE2d 782) (1967). Since no privacy interest exists in the physical characteristics of one's handwriting, and the documents were seized not for their content but only for the purpose of obtaining a handwriting sample, there was no violation of the privacy interests undergirding the statute.

2. Lowe claims that because the State failed to timely provide him with a copy of the letter to Delk pursuant to his OCGA § 17-7-210 request, the trial court erred by ruling the letter was admissible.[2] It is undisputed that Lowe's attorney obtained a copy of the letter over a month prior to trial from counsel for one of the co-defendants. Under these circumstances, Lowe can demonstrate no harm, and thus no cause for reversal. *Tyson v. State*, 165 Ga. App. 22-23 (299 SE2d 69) (1983).

3. Lowe further contends that because the State failed to timely provide him with copies of the samples pursuant to OCGA § 17-7-210,

---

[2] We assume for purposes of this discussion, without deciding, that the letter written to Delk was a statement under OCGA § 17-7-210. See *Walraven v. State*, 250 Ga. 401, 405-406 (297 SE2d 278) (1982); compare *Franklin v. State*, 166 Ga. App. 375, 377-378 (304 SE2d 501) (1983).

the trial court erroneously allowed the State to use the seized handwriting samples. The seized papers containing Lowe's handwriting were not introduced into evidence. Only the expert testimony comparing the handwriting on the seized documents was introduced. Nevertheless, Lowe contends that the seized papers were his in-custody statements and were used by the prosecution in the sense that they provided the comparison basis for the expert testimony. OCGA § 17-7-210 "protects an accused from the introduction at trial of incriminating or inculpatory statements made by him while in custody unless he has been furnished with written copies of these statements prior to trial." *Wallin v. State*, 248 Ga. 29, 32 (279 SE2d 687) (1981). Documents merely demonstrating the physical characteristics and style of the defendant's handwriting do not qualify as such statements within the meaning of OCGA § 17-7-210.

4. As to Lowe's contention that the evidence was insufficient, the victim and an accomplice identified him as a perpetrator of the armed robbery, and his fingerprints were found inside the victim's stolen car. The evidence was sufficient for any rational trier of fact to find, beyond a reasonable doubt, that the defendant was guilty of armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Sognier, C. J., Birdsong, P. J., Carley, P. J., Pope, Beasley, Cooper, JJ., and Judge Arnold Shulman, concur. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent as it is my view that the warrant for the search of defendant's jail cell was issued for the unlawful purpose of seizing "private papers" in violation of OCGA § 17-5-21 (a) (5).

The majority relies heavily on a Fourth Amendment analysis in determining that the warranted search of defendant's jail cell was proper. It is my view that such an analysis is unnecessary. "After all, 'Georgia has long granted more protection to its citizens than has the United States. . . .' *Creamer v. State*, 229 Ga. 511, 515 (192 SE2d 350). And, although Georgia cannot provide less protection for its citizenry, it can provide more. Id." *Smith v. City of East Point*, 183 Ga. App. 659, 660 (1) (359 SE2d 692).

One of defendant's accomplices received an anonymous letter with a return address from the jail where defendant was incarcerated. The letter personally and affectionately refers to the accomplice and advises the accomplice to "make sure the lawyer withdraw [sic] your statement ok because you was scared and didn't know what you was saying ok. . . ." The letter suggests circumstances which exonerate the anonymous author from criminal liability relating to any theft or armed robbery and the anonymous author seems to encourage the ac-

complice to adopt the account of events which is described in the letter.

Investigator Christy Liss of the DeKalb County District Attorney's Office executed an "AFFIDAVIT AND APPLICATION FOR A SEARCH WARRANT" for defendant's jail cell and deposed therein as follows: "ON OCTOBER 10, 1990, RANDOLPH NEWBY, SR., REPORTED BEING ROBBED AT GUNPOINT BY THREE BLACK MALES IN HIS ROOM AT THE MOTEL SIX, 2565 WESLEY CHAPEL ROAD, DEKALB COUNTY, GEORGIA. MR. NEWBY STATED THAT HE HAD PICKED UP A PROSTITUTE NAMED KAREN DELK AND HAD GONE WITH HER TO HIS ROOM. HE STATED THAT THE MALES ENTERED HIS ROOM, ROBBED HIM AND TIED HIM UP USING A TELEPHONE CORD. MS. DELK WAS LOCATED AND ARRESTED BY THE DEKALB COUNTY POLICE A SHORT TIME AFTER THE ALLEGED ROBBERY. KAREN DELK HAS GIVEN A STATEMENT CONFIRMING THAT ROBBERY DID OCCUR AND IMPLICATING TERRY EUGENE BROWN AND [DEFENDANT] AS BEING TWO OF THE ROBBERS.

"ON JANUARY 31, 1991, MS. DELK'S ATTORNEY GAVE THE DEKALB COUNTY DISTRICT ATTORNEY'S OFFICE A COPY OF THE LETTER WHICH WAS RECEIVED BY MS. DELK IN THE DEKALB JAIL. THE LETTER CONTAINS WHAT APPEARS TO BE A PROPOSED VERSION OF THE FACTS OF THE ALLEGED ROBBERY. IT ALSO INSTRUCTS MS. DELK TO 'MAKE SURE THE LAWYER WITHDRAW [sic] YOUR STATEMENT OK BECAUSE YOU WAS SCARED AND DIDN'T KNOW WHAT YOU WAS SAYING . . .' THE LETTER SEEMS TO INDICATE THAT ONE OF MS. DELK'S CO-DEFENDANT'S MAY BE ATTEMPTING TO INFLUENCE WHAT SHE MAY TESTIFY TO AT TRIAL. THE LETTER IS UNSIGNED, SO IT IS NECESSARY TO DETERMINE WHO WROTE IT. THE BEST METHOD WOULD BE TO OBTAIN THE KNOWN WRITING OF TERRY EUGENE BROWN AND [DEFENDANT] AND HAVE IT COMPARED TO THE LETTER."

A search warrant was issued for defendant's jail cell, providing for the seizure of "PAPERS AND DOCUMENTS CONTAINING THE HANDWRITING OF THE [DEFENDANT]." The search warrant alleged that these papers and documents "are in violation of . . . O.C.G.A. Section 16-8-41[, the Code section defining armed robbery, and]; O.C.G.A. Section 16-10-72[, the Code section prohibiting subornation of perjury or false swearing]." The warrant was executed and a search of defendant's jail cell revealed handwriting samples which matched the handwriting of the anonymous letter.

A search warrant may issue for the seizure of "[a]ny item, sub-

stance, object, thing, or matter, other than the private papers of any person, which is tangible evidence of the commission of the crime for which probable cause is shown." OCGA § 17-5-21 (a) (5). "If private papers constitute merely 'tangible evidence' of the commission of a crime, they are not seizable. § 3 (e) Searches and Seizures Act, Ga. L. 1966, pp. 567, 568 (Code Ann § 27-303 (e) [now OCGA § 17-5-21 (5)])." *Tuzman v. State*, 145 Ga. App. 761, 766 (2) (244 SE2d 882).

In the case sub judice, defendant's "private papers" were the object of the warrant for the search of his jail cell. Further, the documents seized from defendant's jail cell were used as the basis for admission of circumstantial evidence that defendant committed the crimes charged. Consequently, it is my view that the trial court erred in failing to suppress evidence derived from the illegal search of defendant's jail cell.

DECIDED FEBRUARY 17, 1992 —
RECONSIDERATION DENIED MARCH 10, 1992 — 

*R. Stephen Roberts*, for appellant.
*Robert E. Wilson, District Attorney, Barbara B. Conroy, Gregory J. Lohmeier, Assistant District Attorneys*, for appellee.