**Roy PADGETT, et al., Plaintiffs,**

**v.**

**Joe FERRERO, Commissioner of Georgia Department of Corrections, et al., Defendants.**

Civil Action No. 1:01–CV–1936–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 10, 2003.

1340

Christopher David Booth, Randall Marc Hawkins, Kimberly Jean Johnson, Paul R. Wellons, Jones Day, William E. Hoffmann, Jr., Patrice D. Russell, King & Spalding, Atlanta, GA, for Plaintiffs.

Thurbert E. Baker, John C. Jones, David E. Langford, Kathleen Mary Pacious, Office of State Attorney General, Atlanta, GA, for Defendants.

*ORDER*

THRASH, District Judge.

This action for injunctive relief seeks to have the Georgia law requiring DNA sampling of all convicted felons declared unconstitutional. The case is currently before the Court on Defendants' Motion for Summary Judgment [Doc. 37] and Plaintiff–Intervenors' Cross–Motion for Summary Judgment [Doc. 40]. For the reasons set forth below, the Defendants' Motion for Summary Judgment is granted and Plaintiffs' motion is denied.

## I. BACKGROUND

The Plaintiffs are convicted felons who served or are serving prison sentences which started before July 1, 2000. Plaintiffs' sentences will end after July 1, 2000. The Defendant Georgia Bureau of Investigation is a law enforcement agency within the state of Georgia. The Defendant Georgia Department of Corrections administers the prison system for the state of Georgia. The Defendant Joe Ferrero is the Commissioner of the Georgia Department of Corrections.

The material facts in this case are not in dispute. In 2000, the Georgia General Assembly amended O.C.G.A. § 24–4–60 to require "any person convicted of a felony and incarcerated in a state correctional facility" to have a sample of his deoxyribonucleic acid ("DNA") taken: (1) by swabbing the inside of his mouth; (2) from a sample of his blood; or (3) by some other non-invasive procedure. O.C.G.A. § 24–4–60. The DNA sample is to be "typed" or analyzed to determine the identifying characteristics of the person from whom it was taken. *Id.* The convict's identifying information is to be stored in a data bank maintained by the Georgia Bureau of Investigation. *Id.* The information in the data bank may then be released directly to federal, state, or local law enforcement upon a "request made in furtherance of an official investigation of any criminal offense." O.C.G.A. § 24–4–63(a).

Two of the Plaintiffs in this case, Roy Padgett and Frederick Pettigrew, have already given DNA samples which are currently in the Georgia Bureau of Investigation's database. (Staples Aff. ¶ 6.) The action has been dismissed as to them. John Burney has given a DNA sample but it is sequestered pending the outcome of this litigation. Paul N. Boulineau has yet to provide a DNA sample. As required by the statute, Defendants will take a sample and store information from Boulineau's DNA before he is released from prison. (Hitchcock Aff. ¶ 4.) Department of Corrections' policy dictates that a member of the prison medical staff will take a sample of Boulineau's DNA by using swabs to collect saliva from the inside of his mouth. (*Id.* at ¶¶ 4–5.) Those swabs will then be sent to the Georgia Bureau of Investigation for typing and placement in the DNA database. (*Id.* at 5.) Failure to comply with the requirement to give a DNA sample will subject the inmate to a disciplinary report, followed by a hearing and disciplinary action by prison staff. (*Id.* at ¶¶ 7–9.) If the inmate still refuses to cooperate, the sample will be taken by force.

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is material if it "might affect the outcome of the suit under the governing law." *Id.* The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *DISCUSSION*

Plaintiffs claim that the DNA sampling statute is invalid as an unreasonable search and seizure in violation of the Fourth Amendment, that it violates the Ex Post Facto clause of Article I of the United States Constitution, that it violates certain privacy rights implicit in the penumbra of the Bill of Rights, that it violates the right against self incrimination, and that it deprives them of Due Process.

### A. *Eleventh Amendment Immunity*

Defendants contend that the Eleventh Amendment to the United States Constitution bars the action against the Georgia Bureau of Investigation and the Georgia Department of Corrections. The Eleventh Amendment bars suit against states and those entities which are arms of the state. *Fouche v. Jekyll Island–State Park Authority*, 713 F.2d 1518, 1520 (11th Cir.1983). An entity is an arm of the state when the relief sought against the named defendant would actually operate against the state if granted. *Jackson v. Georgia*

*Dept. of Transp.*, 16 F.3d 1573, 1577 (11th Cir.1994). Plaintiffs' only response is that they may seek injunctive relief against the Defendant Ferrero. This constitutes abandonment of any claims against the Georgia Bureau of Investigation and the Georgia Department of Corrections. Therefore, their Motion for Summary Judgment is granted.

### B. *Fourth Amendment*

■■■ Plaintiffs claim that O.C.G.A. § 24–4–60 authorizes a search which violates their Fourth Amendment right to be free from unreasonable searches and seizures. A compelled intrusion into the body for a blood or saliva sample is a Fourth Amendment search. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Schmerber v. California*, 384 U.S. 757, 767–68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Therefore, the search must be reasonable to comply with the mandate of the Fourth Amendment. What is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself," and the permissibility of the search is "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner*, 489 U.S. at 619, 109 S.Ct. 1402. In general, courts strike the reasonableness balance in favor of the warrant requirement of the Fourth Amendment. With some narrowly defined exceptions, a search is not reasonable unless it is carried out pursuant to a judicial warrant issued on probable cause. *Id.* In general, searches performed in the absence of a warrant and pursuant to an exception must be predicated upon "probable cause to believe that the person to be searched has violated the law," or, at the very least,

"some quantum of individualized suspicion." *Id.* at 624, 109 S.Ct. 1402.

In the face of Fourth Amendment challenges, the overwhelming majority of courts have held that DNA collection and typing laws are constitutional. *See Roe v. Marcotte*, 193 F.3d 72 (2nd Cir.1999); *Boling v. Romer*, 101 F.3d 1336 (10th Cir. 1996); *Rise v. State of Oregon*, 59 F.3d 1556 (9th Cir.1995); *Jones v. Murray*, 962 F.2d 302 (4th Cir.1992). These cases properly weigh the interests of the state and those of the individuals involved. The bodily intrusion of taking a blood or saliva sample is minimal. It is not significantly greater than taking fingerprints or a photograph. The state has a compelling interest in obtaining reliable and accurate identifying characteristics of individuals convicted of felonies. These valid law enforcement interests outweigh a convicted felon's privacy interests. To the extent that probable cause or individualized suspicion is required to justify a search, the Plaintiffs' felony convictions provide that justification. Therefore, O.C.G.A. § 24–4–60 does not authorize unreasonable searches in violation of the Fourth Amendment.

■■■ Plaintiffs contend that in order for the state to take samples of their DNA, it must be acting in furtherance of a "special need" beyond general law enforcement. The special needs doctrine is an exception to the general requirement of individualized suspicion for searches; if a search is in furtherance of a special need outside of general law enforcement, then individualized suspicion is not required. Plaintiffs rely on two recent Supreme Court cases and a Ninth Circuit case for this argument. In *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), the Court struck down as unconsti-

tutional motor vehicle roadblocks designed to target drug trafficking. Because the roadblocks served the ends of general law enforcement instead of a special need, the Court found them to be invalid under the Fourth Amendment. Similarly, in *Ferguson v. City of Charleston*, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), the Court held that performing drug screens on mothers who met certain demographic criteria was impermissible, because the statute authorized suspicionless searches designed to meet the needs of general law enforcement instead of a special need of the state. In *United States v. Kincade*, 345 F.3d 1095 (9th Cir.2003), a divided panel of the Ninth Circuit relied upon these two Supreme Court cases to hold that the federal DNA act was unconstitutional.

I am not persuaded by the Plaintiffs' argument. Most importantly, the Supreme Court has not used the "special needs" analysis in defining the Fourth Amendment rights of prisoners. In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court declined to extend the special needs doctrine to prisoners. In that case, the Court approved a suspicionless search of an inmate's cell over a Fourth Amendment challenge, without any mention of a special need. The Supreme Court began its discussion by noting that "while persons imprisoned for crimes enjoy many protections of the Constitution, it is ... clear that imprisonment carries with it the circumscription or loss of many significant rights." *Id.* at 524, 104 S.Ct. 3194. The loss of those rights is necessitated by the needs of properly running a penological system, including internal security, justice, deterrence and retribution. *Id.* Based on those considerations, the Court concluded that "the Fourth Amendment proscription

against unreasonable searches does not apply within the confines of the prison cell," thus eliminating any argument that prison officials must have a special need for a suspicionless search. *Id.* at 526, 104 S.Ct. 3194.

The special needs decisions of *Edmond* and *Ferguson* do not alter the Supreme Court's holding in *Hudson*. Courts continue to apply the *Hudson* decision to cases involving suspicionless searches of prisoners, even though there is no special need beyond general law enforcement. *See Willis v. Artuz*, 301 F.3d 65, 67–68 (2nd Cir.2002); *United States v. Reece*, 797 F.Supp. 843, 846 (D.Colo.1992). The Fourth Circuit aptly summed up the reason for the distinction between prisoner and non-prisoner cases:

> Because we consider the cases which involve the Fourth Amendment rights of prison inmates to comprise a separate category of cases to which the usual per se requirement of probable cause does not apply, there is no cause to address whether the so-called "special needs" exception, relied on by the district court, applies in this case.

*Jones*, 962 F.2d at 307 n. 2. Thus, the Fourth Amendment special needs analysis is not applicable to cases involving searches of convicted felons. Cases cited by Plaintiffs are inapplicable because they do not concern convicted felons currently serving prison sentences. *See Lowe v. State*, 203 Ga.App. 277, 416 S.E.2d 750 (1992) (Fourth Amendment rights of pretrial detainees); *United States v. Cohen*, 796 F.2d 20 (2nd Cir.1986) (same).

I also decline to follow the Ninth Circuit's most recent decision in this area, *United States v. Kincade*, 345 F.3d 1095 (9th Cir.2003) (overruling *Rise v. State of*

*Oregon,* 59 F.3d 1556 (9th Cir.1995)). In that case, the court ignored the compelling interest of the state in obtaining accurate and reliable identifying characteristics of individuals convicted of crimes. The court's distinction between fingerprinting and obtaining a DNA sample is not of constitutional significance. The court's assertion that individuals have a lesser expectation of privacy in their fingerprints because they are exposed to public view is problematical at best. Its assertion that fingerprints are taken to affirm that law enforcement has the right person in custody, while true up to a point, completely ignores the law enforcement interest in using fingerprints to solve other crimes. Judge O'Scannlain persuasively points out the error of the court in extending the "special needs" analysis of *Edmond* and *Ferguson* to overrule prior circuit precedent. *Id.* at 1115–17 (O'Scannlain, J., dissenting).

Because DNA sampling is reasonable in light of the strong interests of the state and the diminished privacy interests of Plaintiffs, O.C.G.A. § 24–4–60 does not violate the Fourth Amendment. This same balancing test shows that the statute does not violate the right to be free from unreasonable searches and seizures guaranteed by the Georgia Constitution as well. *See City of East Point v. Smith,* 258 Ga. 111, 112, 365 S.E.2d 432 (1988) (looking to the Fourth Amendment and using balancing test to evaluate suspicionless drug test of fire chief). Summary judgment for Defendants is proper on Plaintiffs' search and seizure claims.

## C.  *Privacy Rights*

■   Plaintiffs claim that the statute violates their right to privacy under the Federal and Georgia Constitutions. In sup-

port of their arguments, Plaintiffs cite cases where courts determined that the justifications for a search did not comply with the requirements of the Fourth Amendment, thus unjustly infringing on reasonable expectations of privacy. *See In re Shabazz,* 200 F.Supp.2d 578, 584–85 (D.S.C.2002) (considering legitimacy of grand jury subpoena in light of Fourth Amendment). This is not such a case. The identification of convicted felons is a legitimate state interest of great importance, and though oral swabbing or taking a blood sample is slightly more invasive than fingerprinting or photographing, it is justified by its increased accuracy and immutability. Upon imprisonment, convicted felons are subject to much greater losses of privacy than the minimal intrusion necessary to obtain a DNA sample. Since the current law went into effect on July 1, 2000, there have been almost two hundred DNA matches from the GBI database with DNA found at crime scenes. Plaintiffs' right to privacy in their identification, assuming one exists, is substantially outweighed by the interests of the state in having available a DNA database that can be used in solving crimes and exonerating the innocent. Defendants are entitled to summary judgment on Plaintiffs' privacy claims.

## D.  *Ex Post Facto Clause*

■   Plaintiffs contend that O.C.G.A. § 24–4–60 violates the ex post facto clauses of the United States and Georgia Constitutions because it may lead to an increase in the amount of time they spend in prison. Plaintiffs produced no evidence to support this argument. Instead, the only relevant evidence on this issue indicates that while a DNA sample may be taken by force in the case of a refusal, no prison sentences will be extended because of the

failure to cooperate with the statute. (Hitchcock Aff. ¶¶ 7–11.) The purpose of Georgia's DNA collection statute is not to punish, but to obtain a reliable, immutable form of identification for placement in a DNA database, and all the relevant evidence in this case indicates that the statute will not increase the punishment of anyone to whom it is applied. Defendants are entitled to summary judgment on Plaintiffs' Ex Post Facto claims.

### E. *Self Incrimination*

█ Plaintiffs contend that O.C.G.A. § 24–4–60 is unconstitutional because it forces them to submit self incriminatory evidence in violation of the Fifth Amendment of the United States Constitution and Article I, section 1, XVI of the Georgia Constitution. Plaintiffs' claims miss the mark, for DNA samples are not testimonial in nature. *Shaffer v. Saffle,* 148 F.3d 1180, 1181 (10th Cir.1998); *see also Schmerber v. California,* 384 U.S. 757, 764–65, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (holding that blood test evidence and chemical analysis were not testimonial or otherwise communicative). Defendants are entitled to summary judgment on Plaintiffs' claims that O.C.G.A. § 24–4–60 violates the guarantees against compelled self incrimination contained in the United States and Georgia Constitutions.

### F. *Due Process*

█ Plaintiffs claim that O.C.G.A. § 24–4–60 does not comply with the Due Process requirements of the United States and Georgia Constitutions. Plaintiffs contend that the statute fails to provide them with a meaningful opportunity to be heard before they are deprived of their release dates in which they have a liberty interest. There is no evidence upon which this Court can determine that failure to comply with the statute will result in the extension of Plaintiffs' prison sentences or denial of their parole. (Hitchcock Aff. ¶¶ 7–11.) Thus, there is no risk that Plaintiffs will be deprived of the liberty interest upon which they base their Due Process claims. Moreover, upon failure to voluntarily give a sample, a correctional officer "will issue a disciplinary report," after which the Plaintiffs would be provided a hearing at which they may call witnesses. (*Id.*) There is no Due Process violation, and Defendants are entitled to summary judgment on those claims.

## IV. *CONCLUSION*

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. 37] is GRANTED and Plaintiff–Intervenors' Cross–Motion for Summary Judgment [Doc. 40] is DENIED. The Clerk is directed to enter judgment in favor of the Defendants.