## A01A0925. BARRERA-PALAMIN v. THE STATE.
### (551 SE2d 76)

ELLINGTON, Judge.

After a bench trial, Bernabe Barrera-Palamin was convicted of voluntary manslaughter, OCGA § 16-5-2 (a). Barrera appeals, challenging the denial of his motion to suppress and the sufficiency of the evidence. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the record shows that on the evening of July 21, 1999, Barrera argued with Orlando Maldonado in a bar near his residence in Dalton. Maldonado and a friend left soon after the argument; Barrera followed them out. Several hours later, at 1:39 a.m., Barrera was arrested for driving under the influence of alcohol and booked into jail. The clothes he was wearing at the time of his arrest were placed in a bag labeled with his name and placed in a locked closet. Three days later, the police recovered the body of Maldonado propped against a tree less than a block from the bar. Maldonado had not been seen since he left the bar on the evening of July 21. An autopsy revealed that Maldonado's death was caused by a single stab wound to the heart. When his body was found, Maldonado was wearing the clothes he had been wearing when he argued with Barrera at the bar.

---

[1] *Stone v. State*, 248 Ga. App. 190 (546 SE2d 787) (2001).

The investigating officers obtained Barrera's consent to search his home and car. The investigators found two identical knives, one under Barrera's bed and one in the trunk of his car. The pathologist testified that the knives were consistent in dimensions with the stab wound which killed Maldonado. Without Barrera's consent and without a warrant, investigating officers retrieved Barrera's clothes from the jail lock-up and submitted them to the state crime lab for examination. A forensic serologist from the crime lab conclusively identified blood found on Barrera's clothes as belonging to Maldonado. Barrera agreed to take a polygraph test and stipulated to the admissibility of the results. The examiner testified that Barrera gave deceptive answers to questions about Maldonado's death. An acquaintance of Barrera's testified that, after his arrest and before the police searched his residence, Barrera asked him to remove several items, including a wallet, from his residence and safeguard them for him. The wallet belonged to Maldonado.

1. Barrera contends the trial court erred in denying his motion to suppress the results of the tests conducted on the clothing he was wearing at the time of his arrest. Barrera contends that, as a pretrial detainee, he had a legitimate, albeit diminished, expectation of privacy in his clothing while it was being stored in a jail locker, citing *State v. Henderson,* 271 Ga. 264 (517 SE2d 61) (1999).[2]

The Court has repeatedly held, however, that, once a person is lawfully arrested and in custody, the effects in his possession may later be seized and searched without a warrant. *Batton v. State,* 260 Ga. 127, 129-130 (3) (391 SE2d 914) (1990) (victim's blood found on arrestee's clothing); *Williams v. State,* 258 Ga. 80-81 (2) (365 SE2d 408) (1988) (jewelry later identified as belonging to the murder victim); *Eberhart v. State,* 257 Ga. 600, 602 (2) (361 SE2d 821) (1987) (blood and fiber evidence found on arrestee's clothing). See *United States v. Edwards,* 415 U. S. 800 (94 SC 1234, 39 LE2d 771) (1974).[3]

---

[2] In *Henderson,* the Supreme Court of Georgia held that a valid search warrant is required before "representatives of the prosecution" may search the cell of a pretrial detainee "solely for the purpose of uncovering incriminating evidence which could be used against the detainee at trial, rather than out of concern for [a] legitimate prison objective[ ]," 271 Ga. at 267 (3), such as "ensuring the safety of prison staffs, administrative personnel, visitors and inmates; the exclusion of drugs and contraband from prison premises; the detection of escape plots; and the maintenance of a sanitary environment." Id. at 265 (1) (citing *Hudson v. Palmer,* 468 U. S. 517, 526-527 (104 SC 3194, 82 LE2d 393) (1984)).

[3] In *Edwards,* the United States Supreme Court held:
once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other.
415 U. S. at 807.

Our analysis is not changed by the fact that Barrera was arrested on one charge, that is, driving under the influence of alcohol, but the police seized his clothes as part of their investigation of an unrelated crime, that is, the homicide of Maldonado. As observed by the Court of Appeals of Texas,

> The expectation of one arrested is that one's clothing will be taken away when one assumes jail garb. . . . [I]t is difficult to conceive of an argument why society would distinguish between expectations of privacy in clothing of inmates based on the offense for which that clothing was tested. As with so many matters pertaining to being confined to jail, there simply is no reasonable expectation of privacy in the clothing taken from a prisoner.

*Oles v. State*, 965 SW2d 641, 644 (Tex. App. 1998). Because Barrera, once he was lawfully arrested for DUI, had no reasonable expectation that his clothing would not be seized and tested for evidence of a crime, the trial court did not err in denying his motion to suppress. *Carter v. State*, 224 Ga. App. 367, 368 (480 SE2d 376) (1997); *Loden v. State*, 199 Ga. App. 683, 687-688 (2) (406 SE2d 103) (1991).

2. Barrera contends the evidence was insufficient to convict him of voluntary manslaughter in that there was no evidence he caused Maldonado's death solely as a result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person, as required by OCGA § 16-5-2 (a). Citing *Lewandowski v. State*, 267 Ga. 831 (483 SE2d 582) (1997), Barrera argues: "The evidence did not show that appellant acted out of passion resulting from provocation sufficient to excite such passion in a *reasonable person*. . . . It is of no moment whether the provocation (if any existed in this case), was sufficient to excite the deadly passion in a particular defendant." (Emphasis in original.)

This argument is without merit. In *Lewandowski,* the Supreme Court upheld the exclusion of expert testimony regarding a psychological evaluation of a defendant who asserted the defense of provocation to a murder charge. The Supreme Court held that whether the provocation was sufficient to excite the deadly passion in the particular defendant was irrelevant and inadmissible to the factfinder's determination of whether the provocation would have excited a deadly passion in a "reasonable person." 267 Ga. at 832 (2). *Lewandowski* certainly cannot be read to require the State to offer separate evidence that the provocation was sufficient to excite deadly passion in a reasonable person; "[t]he sufficiency of the provocation was an issue for the [factfinder] to determine." (Footnote omitted.) *Williams v. State*, 245 Ga. App. 670, 671 (1) (538 SE2d 544) (2000).

Review of the transcript as summarized above reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that Barrera was guilty of voluntary manslaughter. *Johnson v. State*, 236 Ga. App. 61, 63-64 (1) (510 SE2d 918) (1999); *Nelson v. State*, 213 Ga. App. 641, 642 (1) (445 SE2d 543) (1994); *Mason v. State*, 199 Ga. App. 691, 692-693 (1) (405 SE2d 747) (1991).

*Judgment affirmed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED JUNE 26, 2001 —
RECONSIDERATION DENIED JULY 16, 2001 — 

*Michael R. McCarthy*, for appellant.

*Kermit N. McManus, District Attorney, Stephen E. Spencer, Assistant District Attorney*, for appellee.