## S13A0611. ARMSTEAD v. THE STATE.
### (744 SE2d 774)

BENHAM, Justice.

Appellant Craig Armstead was convicted of murder, aggravated assault, possession of a weapon during the commission of a crime, and unlawful eavesdropping and surveillance, all of which were crimes he committed in his workplace, including the stabbing death of his co-worker Kerri Harris.[1] The evidence at trial showed appellant placed a video camera in a women's restroom at his workplace and commenced a scheme whereby he would record his female co-workers using the restroom, retrieve the tapes and replace them after-hours, and take the tapes home where he watched and stored them. During his employment, appellant attempted to date the victim, but she rebuffed him. On the day of her death, the victim and another woman had reported to human resources that they found a camera in the women's restroom. Although the women did not know who had placed the camera in the ladies' room, appellant believed he had been discovered. Throughout the day, appellant became increasingly agitated, especially when he noticed police had been called to the

---

[1] The crimes took place between 2006 and June 26, 2008, the date on which appellant killed the victim. On September 15, 2008, a DeKalb County grand jury indicted appellant on charges of malice murder, felony murder, aggravated assault (deadly weapon), aggravated assault (causing serious bodily injury), one count of possession of a weapon during the commission of a crime, and eighteen counts of unlawful eavesdropping and surveillance. Appellant was tried before a jury from August 16, 2010, to August 27, 2010, with the jury returning a verdict of guilty on all charges. On September 7, 2010, the trial court sentenced appellant to life for malice murder, five years to be served concurrently for possession of a weapon during the commission of a crime, and 60 years to be served consecutively for unlawful eavesdropping and surveillance. The felony murder count was vacated as a matter of law and the aggravated assault counts merged as a matter of fact into the malice murder conviction. Appellant timely filed a motion for new trial on October 6, 2010, and amended it on February 21, 2012. On February 28, 2012, the trial court held a hearing on the motion for new trial and denied it on March 6, 2012. Appellant filed a notice of appeal on April 4, 2012, and the case was docketed to the January 2013 term of this Court for a decision to be made on the briefs.

workplace. He obtained a knife from a test kitchen in the facility and waited a few hours for the victim to return from a meeting. As soon as she returned to her office, he stabbed her in the back and neck. Another employee, who had heard noises of someone being injured, followed the sounds and saw appellant leaving the victim's office. Appellant fled the premises, but was arrested soon thereafter. The victim died at the scene.

At trial, it was shown appellant had previously been convicted of manslaughter in the early 1990s in New Jersey for killing an ex-girlfriend by hitting her with a hammer and strangling her to death. Appellant was released from prison in 1999 and relocated to Georgia shortly thereafter. In 2000, appellant was convicted in Georgia and received a one-year sentence for watching a woman in a public restroom. After serving that sentence, he began working at the employer at whose workplace he committed the crimes at issue. Appellant's defense at trial was that he was not guilty by reason of insanity because he was operating under a delusional compulsion. Specifically, appellant's expert psychologist Dr. Eugene Emory testified appellant suffered from intermittent psychosis and, at the time he killed the victim, was operating under a delusional compulsion that the victim was a bad person who needed to be eliminated.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Alvelo v. State*, 290 Ga. 609 (3) (724 SE2d 377) (2012).

2. As his sole enumeration of error, appellant contends the trial court erred when it denied his motion in limine and allowed Dr. William Brickhouse, Director of Mental Health at the DeKalb County Jail, to testify at trial. The facts show appellant was given a mental health evaluation shortly after his booking into the jail. Because he was "behaving bizarrely" and expressed suicidal ideation, he was housed on a psychiatric ward inside the jail to be further evaluated by Dr. Brickhouse and his staff. Appellant was eventually released into the general prison population, but continued to be monitored and evaluated by Dr. Brickhouse and approximately six psychiatrists during his pretrial incarceration spanning just over two years from June 2008 to July 2010. On August 4, 2010, appellant filed notice of his intent to plead not guilty by reason of insanity. Two days later, the State obtained appellant's jail mental health records by subpoena. On August 17, 2010, appellant filed a motion in limine seeking to exclude Dr. Brickhouse's testimony and portions of the testimony of the court-appointed psychologist Dr. Pamela Eilender that were

based on his jail mental health records. On appeal, appellant contends Dr. Brickhouse's testimony should have been excluded[2] because the State improperly obtained his jail mental health records by subpoena and without appellant's consent (i.e., a release) or warrant in violation of the Georgia Constitution and in violation of the Fourth Amendment of the federal constitution. For the reasons set forth below, we affirm the trial court's denial of appellant's motion in limine and the denial of appellant's motion for new trial.

(a) This Court has held that Georgia citizens enjoy a state constitutional right of privacy to their medical records. *King v. State*, 272 Ga. 788, 790 (535 SE2d 492) (2000). In addition, the Georgia legislature has created statutory privileges prohibiting the disclosure of confidential communications between a patient and his psychiatrist, psychologist, or other similar mental healthcare professional. OCGA §§ 24-9-21 (2012)[3] and 43-39-16.[4] We have held, however, that the privacy enjoyed by citizens as to their medical records, including mental health records, is not absolute (*King*, supra, 272 Ga. at 793)[5] and any statutory privilege or right of privacy in such records

---

[2] On appeal, appellant is no longer challenging Dr. Eilender's trial testimony.

[3] At the time appellant was tried, OCGA § 24-9-21 provided in relevant part:
There are certain admissions and communications excluded on grounds of public policy. Among these are: . . .
(5) Communications between psychiatrist and patient;
(6) Communications between licensed psychologist and patient as provided in Code Section 43-39-16;
(7) Communications between patient and a licensed clinical social worker, clinical nurse specialist in psychiatric/mental health, licensed marriage and family therapist, or licensed professional counselor during the psychotherapeutic relationship; and
(8) Communications between or among any psychiatrist, psychologist, licensed clinical social worker, clinical nurse specialist in psychiatric/mental health, licensed marriage and family therapist, and licensed professional counselor who are rendering psychotherapy or have rendered psychotherapy to a patient, regarding that patient's communications which are otherwise privileged by paragraph (5), (6), or (7) of this Code section.
As used in this Code section, the term "psychotherapeutic relationship" means the relationship which arises between a patient and a licensed clinical social worker, a clinical nurse specialist in psychiatric/mental health, a licensed marriage and family therapist, or a licensed professional counselor using psychotherapeutic techniques as defined in Code Section 43-10A-3 and the term "psychotherapy" means the employment of "psychotherapeutic techniques."
As of January 1, 2013, OCGA § 24-9-21 was repealed and is now codified at OCGA § 24-5-501.

[4] OCGA § 43-39-16 provides: "The confidential relations and communications between a licensed psychologist and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."

[5] We note that *King*, supra, did not involve a circumstance where the accused had affirmatively placed her medical condition at issue in a criminal proceeding or otherwise waived her right of privacy and we declined to make a ruling on the efficacy of the State's using a

may be waived by the accused, in particular if the accused affirmatively places his mental capacity in issue in a civil or criminal proceeding. See OCGA § 24-9-40 (a) (2012);[6] *Moreland v. Austin*, 284 Ga. 730, 732 (670 SE2d 68) (2008) ("Georgia law is clear that a plaintiff waives his right of privacy with regard to medical records that are relevant to a medical condition the plaintiff placed in issue in a civil or criminal proceeding."); *Rogers v. State*, 282 Ga. 659 (6) (b) (653 SE2d 31) (2007); *Perkinson v. State*, 279 Ga. 232 (6) (610 SE2d 533) (2005); *Trammel v. Bradberry*, 256 Ga. App. 412, 424 (6) (568 SE2d 715) (2002) (raising defense of insanity waives statutory privilege protecting disclosure from psychiatrist-patient relationship). Here, it is undisputed appellant placed his mental capacity in issue when he filed a notice of intent to pursue a defense of not guilty by reason of insanity. This constituted a waiver of any state constitutional right of privacy or statutory privilege in his mental health records. See id. The record shows the State did not subpoena any of appellant's jailhouse mental health records until after appellant filed his notice, or, alternatively stated, until after appellant waived his privacy rights in the records. Accordingly, the State was not prohibited from obtaining the records by subpoena, and the trial court did not err when it denied appellant's motion in limine and allowed Dr. Brickhouse to testify at trial.

(b) Under these circumstances, appellant also cannot show any violation of the Fourth Amendment's prohibition against unlawful searches and seizures. Pretrial detainees have a substantially diminished expectation of privacy for purposes of the Fourth Amendment. *State v. Henderson*, 271 Ga. 264 (2) (517 SE2d 61) (1999). In a prison setting, the maintenance of "institutional security and internal order" take precedent over any expectation of privacy concerning an incarcerated individual. Id. at 265. Here, the facts show appellant did not initiate any treatment from Dr. Brickhouse and his staff for mental illness. Rather, upon his arrest appellant was initially subject to a mental health screen in accordance with jail protocol and soon thereafter was placed on the jail's psychiatric ward and put on a suicide watch because he was "behaving bizarrely." After appellant was placed in the general prison population, Dr. Brickhouse and his staff continued to monitor and meet with appellant because appellant

---

subpoena to secure such records in the context of circumstances not before the Court. Likewise, *Verlangieri v. State*, 273 Ga. App. 585 (615 SE2d 633) (2005), which is relied upon by appellant, did not involve a situation wherein the accused affirmatively waived his right of privacy or affirmatively placed his medical condition into issue.

[6] As of January 1, 2013, OCGA § 24-9-40 was repealed and is now codified at OCGA § 24-12-1.

would state that he had urges to hurt himself and/or others.[7] For example, during his pretrial incarceration appellant cut himself superficially with a razor and attempted to rush a prison guard. The primary purpose of Dr. Brickhouse's actions, and the actions of his staff, was to control appellant's behavior for the safety of the prison as opposed to caring for appellant's mental health.[8] As such, appellant had a diminished expectation of privacy with regard to his jailhouse mental health records. Id. When appellant announced his intent to assert an insanity defense, he waived what little expectation of privacy he had with regard to his communications with Dr. Brickhouse and his staff. As such, appellant's Fourth Amendment rights were not violated when the State subpoenaed his jail mental health records, and the trial court did not err in denying the motion in limine or in denying the motion for new trial.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 17, 2013.

*Frances C. Kuo*, for appellant.

*Robert D. James, Jr., District Attorney, Leonora Grant, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Bikoff, Assistant Attorney General*, for appellee.

---

[7] Dr. Brickhouse and his staff concluded appellant was malingering in order to improve his housing situation and/or to effect to his benefit the criminal charges pending against him.

[8] That is, Dr. Brickhouse's actions, and that of his staff, were not for the sole purpose of gaining information for the prosecution. See *State v. Henderson*, supra, 271 Ga. at 267-268 (pretrial detainee is protected from unreasonable search and seizure when the search is for the purpose of obtaining incriminating evidence rather than a concern for legitimate prison objectives of safety and security).